**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

ESZTER PRYOR

      Plaintiff,

vs.

THE OHIO STATE UNIVERSITY,
d/b/a The Ohio State University
Diving Club

      SERVE: 3034 Ohio Union
      1739 N. High Street
      Columbus, OH 43210

      SERVE: Dave Yost, Attorney General
      30 E. Broad St., 14th Floor
      Columbus, OH 43215

CASE NO:
JUDGE:

---

**COMPLAINT**

---

1

## I. PRELIMINARY STATEMENT AND BACKGROUND INFORMATION

1. This case, brought pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq. (Title IX"), involves the sexual abuse and exploitation of Plaintiff Estee Pryor, who was then a minor child and a Team USA-hopeful diving athlete, by officials of The Ohio State University (OSU), conducting business as The Ohio State University Diving Club.

2. Since 1982, more than 290 coaches and officials associated with United States Olympic Committee (USOC) sports organizations have been publicly accused of sexual misconduct, according to a *Washington Post* review of sport governing body banned lists, news clips, and court records in several states. The figure spans participants in 15 sports and amounts to an average of eight adults connected to an Olympic organization accused of sexual misconduct every year — or about an act of sexual abuse once every six weeks — for more than 36 years.[1] And for every one of these perpetrator coaches, there are an untold number of victims, many of them minor children, left to suffer in silence.[2]

3. Any athlete in the United States who wants to compete in the Olympics as a diver has only one route to get there: she must be selected by USA Diving and be named

---

[1] Will Hobson & Steven Rich, *Every Six Weeks for More than 36 Years: When Will Sex Abuse in Olympic Sports End?*, WASH. POST (Nov. 17, 2017), https://www.washingtonpost.com/sports/every-six-weeks-for-more-than-36-years-when-will-sex-abuse-in-olympic-sports-end/2017/11/17/286ae804-c88d-11e7-8321-481fd63f174d_story.html?utm_term=.24ca96bb8af3

[2] USA Gymnastics team doctor Larry Nassar's known victims alone now total at least 265. *See* Leonard Greene & Jessica Schladebeck, *Judge Says 265 Have Come Forward with Sexual Assault Allegations Against Larry Nasser*, N.Y. DAILY NEWS (Jan. 31, 2018), http://www.nydailynews.com/news/national/judge-265-larry-nassar-victims-article-1.3790363

part of the U.S. Olympic Diving Team. The coaches and executives who select the diving team therefore possess an inordinate amount of power.  This power structure creates a monopoly-like situation that exposes young, vulnerable athletes to a dangerous dynamic in which they are forced to do anything their coaches say. Athletes know that if they do not obey their coaches, they might not make the team—even if they are more qualified or have better scores than their competitors. As a result, every USA Diving coach and official has an exceptional amount of power to exploit the athletes who compete to be named to Team USA.

4. When young athletes report sexual abuse to adults and Team USA's executives and officials, they are often met with obstruction, denials, and cover-ups by their coaches, by their universities, by USA Diving, and by the clubs that are credentialed and regulated by USA Diving. This teaches young athletes that their complaints and reports of sexual abuse are unimportant because athletes are merely fungible commodities that can be trained and transported to competitions for the sexual gratification and commercial benefit of their coaches and other employees and executives. The toxic Olympic sports culture emboldens adult coaches to continue and proliferate their exploitation without any fear of prosecution or financial penalty, which causes the toxic culture to metastasize.

5. At the time of the events detailed in this complaint, The Ohio State University was fully aware of the toxicity present in its Olympic diving program, and in its programs overall, but did very little to stop it. In fact, OSU's culture of indifference

3

to the safety and well-being of its students has allowed sexual violence to flourish at OSU for the last four decades.

6.  On June 23, 2010, the United States Department of Education's Office for Civil Rights ("OCR") initiated a review of OSU's compliance with Title IX. On September 11, 2014, after a four-year-long review of OSU, OCR announced that the university had violated Title IX.[3] Specifically, OCR found that OSU's policies and procedures were confusing and inconsistent, failed to designate timeframes for the completion of major stages of sexual abuse investigations, and failed to ensure that complainants were afforded equal opportunity to participate in the grievance process, in violation of Title IX. In some cases, OCR was unable even to reach a determination about whether OSU adequately responded to complaints because OSU's complaint files were sloppy and indecipherable.[4]

7.  A year after OCR found OSU non-compliant with Title IX, the University launched an initiative designed to "ensure Ohio State is a national leader" in preventing and responding to sexual abuse.[5] Nonetheless, numerous sexual abuse allegations again began accumulating, including the facts that give rise to the instant complaint. In June of 2018, OSU was forced to shutter its sexual assault prevention and response

---

[3] OCR Findings Letter, available at https://www2.ed.gov/documents/press-releases/ohio-state-letter.pdf

[4] Id. at 27-29; see also Resolution Agreement, Ohio State University, OCR Docket #15-10-6002, https://www2.ed.gov/documents/press-releases/ohio-state-agreement.pdf.

[5] The Ohio State University, *Ohio State announces comprehensive plan to combat sexual misconduct and relationship violence*, Ohio State News (Sept. 17, 2015), https://news.osu.edu/ohio-state-announces-comprehensive-plan-to-combat-sexual-misconduct-and-relationship-violence/

unit after concerns emerged that unit employees had told victims of abuse they were "lying," "delusional," and had "an active imagination." Other victims were denied services because they would not disclose the identity of their attackers. An independent audit of that unit revealed that it failed to report 57 potential felonies that it was required to report to law enforcement—felonies that likely involve sexual assault.[6]

8. On August 8, 2018, OCR initiated yet another investigation into OSU's compliance with Title IX—this time involving OSU's response to students' allegations of sexual misconduct by Dr. Richard Strauss.[7] Strauss's conduct, and OSU's response thereto, is the subject of another Title IX lawsuit currently being litigated in this Court.[8] The allegations in that lawsuit involve "hundreds, perhaps thousands" of victims who were ignored by OSU for two decades.

9. Like Strauss and the other abusers discussed in this preliminary statement, many coaches at OSU had enormous power, which they exercised with total impunity. For example, when asked in 2011 whether he would dismiss then-football coach Jim Tressel (for conduct unrelated to the abuse discussed in this case), the OSU

---

[6] Jennifer Smola, *Ohio State's troubled sexual assault center failed to report 57 potential felonies, audit finds*, The Columbus Dispatch (July 30, 2019 7:12 AM), https://www.dispatch.com/news/20190730/ohio-states-troubled-sexual-assault-center-failed-to-report-57-potential-felonies-audit-finds

[7] Sarah Buduson, Betrayed: How Ohio failed hundreds of male athletes abused by OSU's Dr. Richard Strauss, News 5 Cleveland (June 24, 2021), https://www.news5cleveland.com/news/local-news/investigations/betrayed-how-ohio-failed-hundreds-of-male-athletes-abused-by-osus-dr-richard-strauss

[8] *John Does 78-100 v. Ohio State Univ.*, Case No. 2:21-cv-03838-SDM-CMV (S.D. Ohio, filed 6/28/21).

president replied: "No, are you kidding? Let me just be very clear: I'm just hopeful the coach doesn't dismiss me."[9]

10. Despite all evidence to the contrary—a federal investigation finding Title IX violations, numerous student complaints, internal reports, witnesses, and more— OSU persists in claiming it is and has been "a leader" on issues of sexual abuse. The survivors of its decades of indifference, including the Plaintiff in the instant case, disagree.

11. Plaintiff Eszter (Estee) Pryor was a victim of the above-described cycle of coercion, complicity, and inaction. Through this lawsuit, Plaintiff intends to shine a light on The Ohio State University Diving Club's wrongful conduct, and to declare that enough is enough; that no other female athletes should have to endure the "disgusting and unnecessary"[10] exploitation, abuse, and forced labor they have experienced at the hands of the USA Diving rapists who served as the gatekeepers of their competitive diving dreams.

12. A separate lawsuit based on this incident has been filed in the federal district court for the Southern District of Indiana. Case No. 1:18-cv-02113-WTL-MJD, filed July 11, 2018. Defendant Ohio State University did not consent to suit in that venue, and moved to dismiss all claims against it based on the doctrine of sovereign immunity. Plaintiff then voluntarily dismissed her claims against OSU. The relevant pleadings,

---

[9] *Gee: No Tressel dismissal*, The Columbus Dispatch (Mar. 8, 2011), available at https://www.youtube.com/watch?v=dCutRJvTK6c.
[10] Quoting McKayla Maroney's tweet from October 2017 under hashtag #MeToo. Tom Schad, *Lawsuit Claims USA Gymnastics Paid to Quiet Olympic Gold Medalist McKayla Maroney Maroney,* USA TODAY (Dec. 20, 2017), https://www.usatoday.com/story/sports/olympics/2017/12/20/lawsuit-usa-gymnastics-paid-quiet-olympic-gold-medalist-mckayla-maroney/969843001/.

which provide further background information on this case, have been attached as **Exhibit 1** (original complaint) and **Exhibit 2** (Plaintiff's Notice of Voluntary Dismissal). There are no Title IX claims in that case, and no remaining claims against OSU.

## II. JURISDICTION, VENUE, AND PARTIES

13. Plaintiffs incorporate by reference the allegations in all previous paragraphs as if fully stated here.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the laws of the United States.

15. Specifically, Plaintiff asserts claims under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred within this district.

17. Plaintiff Ezster (Estee) Pryor is an individual currently residing in Ohio.

18. The Ohio State University (OSU), which conducts business for purposes of this action as the Ohio State University Diving Club, is an instrumentality of the State of Ohio.

19. OSU has waived any claim of sovereign immunity against Title IX claims by operation of 42 U.S.C. 2000d-7, the Remedies Equalization Act.

20. The Ohio State University Diving Club can be served at 3034 Ohio Union, 1739 N. High Street, Columbus, OH 43210, and via the Ohio Attorney General.

21. This action is timely brought pursuant to the relevant state statute, O.R.C. § 2305.111(C), because the Plaintiff was a minor at the time of the abuse alleged herein.

22. All other prerequisites for filing suit in this venue have been met.

### III. SPECIFIC FACTUAL ALLEGATIONS

23. Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully stated here.

24. Eszter "Estee" Pryor was born in 1997 in Romania. She was adopted as a young child by parents in Ohio.

25. Estee was an aspiring young diver, and an Olympic hopeful; she won a bronze medal on Platform at the 2013 Pan Am Juniors in Tucson, Arizona.

26. In order to advance her career in diving and increase her chances of obtaining the personal and commercial benefits of becoming an Olympian, Pryor sought out the most accomplished diving program in her area. That program was The Ohio State University Diving Club.[11]

27. The Ohio State Diving Club practices on the campus of The Ohio State University in Columbus, Ohio.

28. Pryor's abuser, William Bohonyi, except as noted below, was at all times relevant hereto an assistant diving coach at OSU and an "officer or employee" pursuant to section 109.36 of the Ohio Revised Code, employed by the State of Ohio and/or its

---

[11] In 2008, Pryor joined the U.S. Elite Diving Academy, and in 2010 the US Elite Diving Academy became the Ohio State Diving Club. There was no change in coaches between the Ohio State Diving Club and the US.. Elite Diving Academy.

instrumentalities as an instructor at OSU, and cloaked with the actual and apparent authority to represent OSU.

29. Upon information and belief, Bohonyi currently resides at 485 Clarendon Ave., Apt. G, Columbus, Ohio 43223.

30. Steve Skilkens is a former all-American diver for Ohio State, and a major Ohio State Diving booster.

31. Steve Skilkens and his family were friends with Bohonyi and promoted him as a coach for OSU to young female athletes who were divers.

32. In 2014, Bohonyi had free access to the Skilkens' home regardless of whether the Skilkens' were present in the home or not.

33. In June 2014, while Estee was babysitting at the Skilkens' home one afternoon, Bohonyi invited himself over.

34. While there, Bohonyi was communicating with underage girls from the diving team using the Snapchat app, which quickly and automatically deletes photos and messages sent between users.

35. In 2014, Bohonyi was 29 years old. Estee was 16.

36. On July 4, 2014, Bohonyi forced Estee to send him naked pictures of herself.

37. On July 7, 2014, Bohonyi forced Estee to perform oral sex on him on The Ohio State University campus.

38. In mid-July, 2014, Estee traveled with the Ohio State Diving team, with Bohonyi acting as coach, to Bethesda, Maryland for Nationals.

39. During this trip, Estee's 2012 Olympic-trial synchronized diving partner, Rachel Rubadue, saw messages on Estee's phone from Bohonyi that alarmed her.

40. The Ohio State University Diving Coach, John Appleman, was informed of these messages in August 2014.

41. Appleman was informed by another minor diver on the Ohio State diving club that Bohonyi was sexually abusing Estee while at the meet in Bethesda, Maryland.

42. The Ohio State University did not take any action against Bohonyi at that time.

43. The Ohio State University did not speak with Estee, nor her parents, about the messages or the allegations of the relationship between Bohonyi and Estee.

44. In fact, even though she was the victim, the administration at The Ohio State University decided to send *Estee* home from Nationals, the day before she was about to compete, not the perpetrator who sexually abused her—Coach Bohonyi.

45. Christine Thompson, the head Director of The Ohio State Recreational Sports Administration, told Estee over the phone that she was not representing the club very well and to pack up her things and go home.

46. Upon information and belief, Christine Thompson had been informed of Bohonyi's abuse of Plaintiff by Appleman and/or other officials of The Ohio State University before Thompson sent Estee home.

47. Bohonyi coached The Ohio State Diving Club for the remainder of the Maryland meet.

48. Following The Ohio State Diving Club's return to Columbus from the Maryland meet, The Ohio State University conducted an investigation into the allegations that

Bohonyi was having an illegal sexual relationship with a minor female member of the Ohio State Diving Club.

49. Bohonyi showed up to Estee's high school to tell Estee what to say to University officials in order for him to not get in trouble.

50. As part of the University's investigation Estee and her parents gave The Ohio State University Police department Estee's phone in August 2014.

51. From Estee's phone The Ohio State University Police Department obtained pictures and videos of her engaging in sex acts with Bohonyi.

52. Upon information and belief, The Ohio State University took no action with regards to these photos and videos, despite the fact that they obviously constituted child pornography.[12]

53. The Ohio State Department of Recreational Sports, conducted an investigation of the allegations that Bohonyi was having an illegal sexual relationship[13] with a member of the University's diving club in August 2014.

54. On August 29, 2014, The Ohio State Office of Human Resources recommended Bohonyi be terminated from employment for sexual misconduct.

---

[12] These very same pictures were given to state law enforcement in Indiana in 2018 and led to Bohonyi's arrest and conviction in Ohio. Bohonyi was sentenced to four years in Ohio State Prison in August 2019. See https://www.dispatch.com/news/20190812/former-ohio-state-diving-coach-gets-prison-for-sex-with-16-year-old.

[13] Counsel uses the term "relationship" but does not mean to imply that what existed between Bohoyni and minor athlete was a consensual relationship. Bohonyi forced Estee to enter him anally with a sex toy strapped to herself, forced Estee to take turkey baster loaded with his semen and ram it down his throat until he cried, make sex videos and pictures, and prostitute herself to random internet strangers. All of these encounters or mentions of them were recorded in film or audio and provided to the Ohio State University police in August and September 2014.

11

55. However that "termination" was a termination on paper only, as Bohonyi was still allowed on campus and was allowed to use The Ohio State University's facilities to coach minor divers through April 2019.

56. Upon information and belief, Bohonyi's close relationship with The Ohio State University continued until 2019, when Bohonyi was served with the above-discussed federal complaint naming Ohio State University as a Defendant.

57. Bohonyi was served on the campus of The Ohio State University *five years after* he was supposedly terminated.

58. Based on the representation that Bohonyi was "terminated," Estee's parents allowed her to continue to compete for The Ohio State Diving Club.

59. Bohonyi continued his abuse of Estee for almost a year after Bohonyi was "terminated."

60. Between September 2014 and March 2015, while Estee was 17 years old, Bohonyi continued—on a weekly basis—to force Estee to engage in oral, anal, and vaginal sex.

61. As early as 2014, USA Diving had received complaints that William Bohonyi was routinely sexually exploiting, assaulting, and raping not just Pryor, but multiple female athletes that were entrusted into the protection of OSU.[14]

62. However, even after his termination from OSU, Bohonyi continued to coach, and continued to be in the vicinity of Pryor and other vulnerable athletes.

---

[14] For purposes of this Complaint, "rape" means any non-consensual sexual activity that would be considered criminal under Ohio law, including the sexual touching of minors.

63. Mr. Bohonyi continued to be invested in the diving community by continuing his communication with athletes, their parents, attending graduation parties and lifeguarding.

64. Mr. Bohonyi had continuous access to OSU resources and underage athletes.

65. USA Diving waited until February 2015 to make Bohonyi "permanently ineligible for membership."

66. Bohonyi continued to manipulate Estee and coach her on what to say and how to lie about their encounters, in order to protect himself.

67. Bohonyi psychologically coerced Estee into believing that she was required to perform sexual services in exchange for her continued involvement in diving. He preyed on her age, vulnerability, and dreams of becoming an Olympian, and used the power structure and imbalance of power (coach/athlete) to make her believe she was required to sexually submit to him in exchange for her chance to represent Team USA.

68. Several of the acts of abuse described in this complaint occurred on the campus of The Ohio State University, including abuse that occurred after Bohonyi's "termination."

69. Several of these sexual acts occurred in Bohonyi's car before and after diving practices and meets.

70. Bohonyi was allowed to victimize Estee in nearly the exact same way that he abused other girls in the past because the officials and entities in charge of policing Bohonyi did nothing to stop him.

13

71. But for Bohonyi's status as coach and agent of OSU, he never could have gained access to or power over those female divers he victimized.

72. Prior to the misconduct of Bohonyi and the negligent actions of The Ohio State University, Estee had received a full scholarship to dive at The Ohio State University.

73. Ms. Pryor gave up her scholarship to OSU because her abuser was still active with the University.

74. Trying to overcome the abuse and exploitation she suffered, Estee earned a full scholarship to compete in diving for Penn State University.

75. She was unable to compete for Penn State, however, because she constantly had to deal with Bohonyi.

76. Estee was ostracized by the diving community and her teammates because of the abuse she endured at the hands of her coach.

77. Estee had two visits to the psychiatric ward during the spring of 2015.

78. In mid-April, 2015, Estee's parents sent her to a therapy program for sexual trauma in St. George, Utah.

79. As of December 2017, Bohonyi was privately coaching an OSU diving club member and competitor of Estee Pryor, Esther Lawrence, in Ohio.

80. Without any assistance from OSU, Estee sought and obtained a protective order against Bohonyi on November 4, 2015.

81. Many of these encounters would not have occurred if OSU had turned over the hundreds of pictures of child pornography produced at Bohonyi's direction to the appropriate law enforcement agency.

82. Estee was coerced into sex with Bohonyi for the last time in August 2015.

83. Since this time, she has been harassed by the diving community. This harassment included anonymous letters sent to her high school, anonymous text messages, and sticky notes left for her that said "slut," "whore," and "die."

84. Three members of The Ohio State University Diving Club bullied her because she had reported her abuse and exploitation and implicated diving coaches and entities.

85. Estee was also forced to move down to a lower level on the diving team in retaliation for her reports.

86. The Ohio State University has still, to this day, never followed up with Ms. Pryor or her parents.

### IV. CLAIMS FOR RELIEF

**COUNT I - Violation of Title IX, 20 U.S.C. § 1681(a),** *et seq.***: Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment/Deliberate Indifference to Known Risk/Sex Discrimination**

87. Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully stated here.

88. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

15

89. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

90. As explained in Title IX guidance issued by the United States Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

91. Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

92. Title IX covers all persons subjected to discrimination in any program or activity of a school that receives any federal financial assistance, and covers sexual harassment—including sexual assault and sexual abuse—by school employees, students, and third parties.

93. Title IX requires OSU to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

94. William Bohonyi was an OSU employee whose actions were carried out as an OSU diving coach.

95. Bohonyi continued to act as an agent of OSU, and his conduct was sanctioned and ratified by OSU, even after his termination.

96. Bohonyi's conduct toward Plaintiff, as set forth in this Complaint, was sex discrimination under Title IX.

16

97. Bohonyi's sexual harassment of Plaintiff (and others) was rampant, occurring regularly on campus and elsewhere, for over a year.

98. OSU had actual knowledge that Bohonyi posed a substantial risk to minor females who he coached and interacted with.

99. OSU had actual knowledge of Bohonyi's serial sexual harassment and permitted it to continue unchecked for far too long.

100.    Even after OSU finally took action, it continued to put Plaintiff in situations where she would have to interact with, and be subjected to further psychological abuse by her abuser.

101.    OSU did not adequately ameliorate the situation or protect Estee from Bohonyi.

102.    OSU created and was deliberately indifferent to a sexually hostile culture, and was deliberately indifferent to the abuse suffered by Plaintiff within its education programs and activities, by, *inter alia*:

a.      Creating an environment and culture in which coaches like Bohonyi were given the unfettered power to coerce and control student athletes;

b.      Mishandling students' reports about Bohonyi's conduct and/or discouraging students from reporting Bohonyi's conduct;

c.      Failing to promptly and appropriately investigate, remedy, and respond to complaints about Bohonyi's conduct;

d.      Failing to adequately supervise Bohonyi, after learning that he posed a substantial risk to the safety of student-athletes;

e.     Failing to take prompt and appropriate corrective action to prevent Bohonyi from sexually harassing other student-athletes;

f.     Failing to notify law enforcement about Bohonyi's abuse, which included overt criminal conduct.

103.   OSU's creation of and deliberate indifference to the sexually hostile culture within its education programs and activities substantially increased the risk that Plaintiff and others would be sexually harassed and abused.

104.   The above-described events constitute discrimination against the Plaintiff on the basis of her sex.

105.   The sexual harassment and abuse that Plaintiff suffered was so severe, pervasive, and objectively offensive that it deprived her of the benefits of educational programs and activities offered by OSU, including the benefits of competing for Team USA, the facilities of OSU's campus itself, and other amenities offered to student-athletes by OSU.

106.   As a direct and proximate result of OSU's creation of and deliberate indifference to a sexually hostile educational environment, and by its deliberate indifference to her abuse, which violated Title IX, Plaintiff has suffered and continues to suffer damages and injuries.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.  Enter judgment in favor of Plaintiff on her discrimination claims under Title IX;

18

b.  Enter judgment against Defendant The Ohio State University;

c.  Declare Defendant The Ohio State University's conduct in violation of Title IX of the Education Amendments of 1972;

d.  Award Plaintiff compensatory damages in amounts to be established at trial, including, without limitation, payment of Plaintiff's medical and other expenses incurred as a consequence of the sexual abuse and/or harassment and The Ohio State University's deliberate indifference; damages for deprivation of equal access to the educational opportunities and benefits provided by The Ohio State University; and damages for past present and future emotional pain and suffering, ongoing mental anguish, loss of past, present and future enjoyment of life, and loss of future earnings and earning capacity;

e.  Award Plaintiff pre-judgment and post-judgment interest;

f.  Award Plaintiff her court costs and expenses, including attorneys' fees, pursuant to 42 U.S.C. § 1988(b); and

g.  Grant such other relief as this Court deems just and proper.

## VI. DEMAND FOR TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all relevant claims set forth in this Complaint.

Respectfully submitted:

/s/ Michael L. Fradin
Michael L. Fradin, Attorney at Law 0091739
8 N. Court St. Suite 403

Athens, Ohio 45701
P: 847-986-5889
F: 847-673-1228

/s/ Jonathan Little
Jonathan Little, Ind. No. 27421-49*
Gabrielle Olshemski, Ind. No. 36467-49*
Saeed and Little, LLP
#189-133 W Market Street
Indianapolis, IN 46204
317-721-9214
jon@sllawfirm.com
gaby@sllawfirm.com

*Pro hac vice application pending