# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| Eszter Pryor,<br>Logan Kline,<br>Marissa Johnson,<br>and Jane Does 4-50,<br>on behalf of themselves and<br>all others similarly situated,<br><br>       Plaintiffs,<br><br>vs.<br><br>USA Diving, Inc.,<br>The Ohio State University Diving Club, and<br>Will Bohonyi,<br><br>       Defendants. | Civil Case No. 1:18-cv-2113-WTL-MJD |

---

## FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

---

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... ii

NATURE OF THE COMPLAINT ................................................................................ 1

PARTIES .............. ...........................................................................................6

    The Plaintiffs ......................................................................................................6

    The Defendants ...................................................................................................6

JURISDICTION .........................................................................................................8

FACTS COMMON TO ALL COUNTS.........................................................................8

    Overview of the Sports Act, the USOC, and its NGBs, clubs, and coaches......................8

    USA Diving: The Commercial Quest for "Medals and Money" Off the
    Labor of Athletes ..............................................................................................13

    Ohio State Diving Club.......................................................................................26

    Congress Is Forced to Step In: The Sports Abuse Act 2017............................................27

PLAINTIFF-SPECIFIC ALLEGATIONS ...................................................................29

CLASS ACTION ALLEGATIONS ............................................................................44

    (B)(2) Injunction Class .......................................................................................45

    (b)(3) and/or (c)(4) Damage Class ........................................................................45

CLAIMS FOR RELIEF .............................................................................................47

DEMAND FOR JURY TRIAL ...................................................................................70

PRAYER FOR RELIEF .............................................................................................70

## NATURE OF THE COMPLAINT

1.      This class action involves sexual abuse, exploitation, and the forced labor of Team USA hopeful diving athletes by the Olympic coaches, entities, officials, and executives who were entrusted to protect them.

2.      Rather than upholding the values and spirit of Team USA, these bad actors manipulated the trust placed in them, abused the power and legitimacy bestowed upon them, shattered the innocence and dreams of numerous female athletes, and violated multiple federal and state laws in the process.

3.      The USOC and its National Governing Body ("NGB") for diving, USA Diving, have reached for commercial success at all costs by ignoring, denying, obstructing, or covering up complaints of sexual abuse, deferring and diverting investigations, and suppressing all questions about the sexual exploitation of its coaches.

4.      The leaders of Team USA, including those who run the USOC and USA Diving, tolerate and often facilitate the sexual abuse of children by coaches and other adults.[1]

5.      With hundreds of millions of dollars on its balance sheet (all of it earned off the backs and labor of Team USA's athletes), the USOC and its NGBs (including USA Diving) could have long ago stopped and helped prevent much of this sexual misconduct, which has been rampant in USA Diving and other sports for decades.

---

[1] Will Hobson, *Victims Say the USOC Deserves Blame for America's Olympic Sex Abuse Problem*, WASH. POST (Feb. 23, 2018), https://www.washingtonpost.com/sports/olympics/victims-say-the-usoc-deserves-blame-for-americas-olympic-sex-abuse-problem/2018/02/23/b5afe70a-1270-11e8-9065-e55346f6de81_story.html?noredirect=on&utm_term=.303109b367f2.

6.      Because of the USOC's complete failure to regulate its NGBs or stop the widespread sexual abuse of Team USA's athletes, Congress stepped in and enacted the Protecting Young Victims from Sexual Abuse and Safe Sport Authorization Act of 2017 ("The 2017 Sports Abuse Act").

7.      This legislation took effect in February 2018 and was passed in direct response to "allegations of sexual abuse made against personnel involved with USA Gymnastics, USA Swimming, and USA Taekwondo and follows hearings [in 2017] before the Senate Judiciary Committee and the Senate Commerce Committee on athlete safety issues."[2]

8.      Architected by Senators Dianne Feinstein (D-Calif.) and Susan Collins (R-Maine), the 2017 Sports Abuse Act was introduced with the broad support of "Republican and Democratic members from both the House and the Senate, and four former Olympic gymnasts."[3]

9.      In testimony on the floor of the Senate, Senator Feinstein emphasized that the 2017 Sports Abuse Act "strengthens the law that allows victims of sex abuse to file suits against those who abused them to commit crimes such as sex trafficking" and that punitive damages are now expressly provided by statute "due to the heinous nature of the crimes."[4]

---

[2] Senator Susan Collins, *At Press Conference with Former Olympic Gymnasts, Senator Collins Urges Colleagues to Support Legislation She Introduced with Senator Feinstein to Protect Athletes from Sexual Abuse*, COLLINS.SENATE.GOV (Jan. 30, 2018), https://www.collins.senate.gov/newsroom/press-conference-former-olympic-gymnasts-senator-collins-urges-colleagues-support

[3] *Id.*

[4] Testimony of Sen. Feinstein, 164 CONG. REC. S589-02, 2018 WL 636521 (Jan. 30, 2018).

10.     Senator Feinstein further condemned the USOC's and the NGBs' commercial obsession with "medals and money"—which are pursued over the safety and wellbeing of America's young athletes:

> One of the common themes I heard from their stories was not just the predatory behavior of the perpetrators, but also how the USA Gymnastics institution failed to protect them. One of the women told me how she heard USA Gymnastics officials say at one point that it was their top priority to obtain "**medals and money**" and that a "reputation of a coach" should not be tarnished by an allegation raised by a victim.[5]

11.     This Congressional action sought to remedy decades of flagrant and knowing sexual abuse at the highest levels of Team USA, across nearly all of the 47 different Olympic sports.

12.     Since 1982, more than 290 coaches and officials associated with the USOC sports organizations have been publicly accused of sexual misconduct, according to a *Washington Post* review of sport governing body banned lists, news clips, and court records in several states. The figure spans participants in 15 sports and amounts to an average of eight adults connected to an Olympic organization accused of sexual misconduct every year — or about an act of sexual

---

[5] Testimony of Sen. Feinstein, 163 CONG. REC. S1634-01, 2017 WL 900895 (Mar. 7, 2017) (emphasis added).

abuse once every six weeks — for more than 36 years.[6] And for every one of these perpetrator coaches, there are an untold number of victims, left to suffer in the shadows.[7]

13.     Diving is one of 47 Olympic sports, which range from archery to wrestling.

14.     Any young diving athlete in the United States who wants to compete in the Olympics as a diver has only one route to get there: she must be selected by USA Diving and be named part of the US Olympic diving team.

15.     The coaches and executives who select the diving team, therefore, possess an inordinate amount of power.

16.     This power structure creates a monopoly-like situation that exposes young, vulnerable, female athletes to a very dangerous dynamic in which they are forced to do anything their coaches say.

17.     Perception is reality, and it's never clear to these athletes which coach actually controls their fate.

18.     But they do know that if they don't obey their coaches, they might not make the team—even if they are more qualified or have better scores than their competitors.

19.     As a result, every USA Diving coach and official has an exceptional amount of power to exploit the labor of the athletes who compete to be named to Team USA—in diving, and in every other sport.

---

[6] Will Hobson & Steven Rich, *Every Six Weeks for More than 36 Years: When Will Sex Abuse in Olympic Sports End?*, WASH. POST (Nov. 17, 2017), https://www.washingtonpost.com/sports/every-six-weeks-for-more-than-36-years-when-will-sex-abuse-in-olympic-sports-end/2017/11/17/286ae804-c88d-11e7-8321-481fd63f174d_story.html?utm_term=.24ca96bb8af3

[7] USA Gymnastics team doctor Larry Nassar's known victims alone now total at least 265. *See* Leonard Greene & Jessica Schladebeck, *Judge Says 265 Have Come Forward with Sexual Assault Allegations Against Larry Nasser*, N.Y. DAILY NEWS (Jan. 31, 2018), http://www.nydailynews.com/news/national/judge-265-larry-nassar-victims-article-1.3790363

20.     When young athletes do report sexual abuse to adults and Team USA's executives and officials, they are often met with obstruction, denials, and cover-ups by their coaches, by USA Diving, and by the clubs that are credentialed and regulated by USA Diving.

21.     This teaches young athletes that their complaints and reports of sexual abuse are unimportant because athletes are merely fungible commodities that can be trained and transported to competitions for the sexual gratification and commercial benefit of their coaches and other employees and executives.

22.     The toxic Olympic sports culture, including inside USA Diving, emboldens adult coaches to continue and proliferate their sexual exploitation without any fear of prosecution or financial penalty, which causes the toxic culture to metastasize.

23.     The combined result is a feedback loop of sexual abuse, exploitation, and forced labor of America's young athletes, all so that the officials leading the USOC and its NGBs can feed the U.S. Olympics machine, which runs on "medals and money."

24.     Anything or anyone that gets in the way of this commercial quest for "medals and money" is silenced, obstructed, defamed, or intimidated into keeping quiet.

25.     This lawsuit focuses on USA Diving, but most of the other NGBs (for the 46 other Olympic sports) are rife with the same systemic sexual abuse of young athletes.

26.     Fortunately, Congress created not only the USOC, but also a long list of federal statutes (including the 2017 Sports Abuse Act) with austere civil remedy provisions specifically crafted to punish and deter the very criminal conduct that was knowingly committed in this case.

27.     Through this lawsuit, Plaintiffs shine a light on the USOC, USA Diving, the Ohio State University Diving Club, and William Bohonyi. Plaintiffs, on behalf of themselves and the Class, declare that enough is enough, that no other female athletes should have to endure the

"disgusting and unnecessary"[8] exploitation, abuse, and forced labor they have experienced at the hands of the USA Diving rapists who stood at the apex—and served as the gatekeepers—of their competitive diving dreams.

## PARTIES

### The Plaintiffs

28.     Plaintiff Ezster Pryor is an individual currently residing in Ohio.

29.     Plaintiff Logan Kline is an individual currently residing in Kansas.

30.     Plaintiff Marissa Johnson is an individual currently residing in Washington.

### The Defendants

#### USA Diving

31.     The Ted Stevens Amateur Sports Act ("The Sports Act") gives the USOC the express authority to authorize National Governing Bodies ("NGBs") in all Olympic Sports.

32.     Defendant USA Diving ("USA Diving") is the USOC-recognized and USOC-regulated NGB for the sport of diving.

33.     USA Diving was at all times herein mentioned and still is an Ohio corporation with its principal place of business in the city of Indianapolis, Indiana.

34.     USA Diving may be served through its counsel, Bernard Pylitt of Katz and Korin and Cunningham, 334 N. Senate Street, Indianapolis, Indiana.

---

[8] Quoting Michaela Moroney's tweet from October 2017 under hashtag #MeToo. Tom Schad, *Lawsuit Claims USA Gymnastics Paid to Quiet Olympic Gold Medalist McKayla Maroney Maroney,* USA TODAY (Dec. 20, 2017), https://www.usatoday.com/story/sports/olympics/2017/12/20/lawsuit-usa-gymnastics-paid-quiet-olympic-gold-medalist-mckayla-maroney/969843001/.

*The Ohio State University Diving Club*

35.    The Ohio State University Diving Club is a USA Swimming Diving Club.

36.    Its website promotes the following companies as its "Partners"—which are likely

its sponsors:



37.    The Ohio State University Diving Club can be served at 3034 Ohio Union, 1739

N. High Street, Columbus, OH 43210.

38.    Its website states:

OSDC HAS BEEN NAMED A USA DIVING JUNIOR PODIUM CENTER
CLASSIFYING IT AS ONE OF THE TOP JUNIOR PROGRAMS IN THE
UNITED STATES.

The Ohio State Diving Club provides recreational diving lessons, a track to the
team level (Bucks classes), high school diving programs and the second highest
ranking junior competitive USA Diving team in the United States.

Hosted through the Buckeye Aquatic Academy, a program of the Department of
Recreational Sports in the Office of Student Life at The Ohio State University,
our goal is to provide excellent coaches, resources, and facilities for age group
divers of all ability levels.

We take pride in developing personalized plans for athletes and their families to

7

Case 2:18-cv-02123-WTL-MJD  Document 18  Filed 08/03/18  Page 10 of 75 PageID #116

achieve their goals whether it be a college scholarship, high school success, national and world championships or even that first flip![9]

***William Bohonyi***

39.     Defendant William Bohonyi is a natural person residing in Ohio.

40.     He can be served at 2194 Country Corners Dr., Columbus, Ohio 43220.

## JURISDICTION

41.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims alleged.

42.     Venue is appropriate in this district because USA Diving has its corporate headquarters in this district and a substantial number of the relevant events occurred here.

## FACTS COMMON TO ALL COUNTS

### Overview of the Sports Act, the USOC, and its NGBs, clubs, and coaches

43.     Congress originally chartered the United States Olympic Association in 1950 to organize and promote the United States' participation in international Olympic competition. This spun into the United States Olympic Committee (the "USOC") in 1964.

44.     In 1978, concerned with "the disorganization and the serious factional disputes that seemed to plague amateur sports in the United States," Congress enacted the Ted Stevens Olympic and Amateur Sports Act ("the Sports Act"), P.L. 95–606 (now codified at 36 U.S.C. § 220501, *et seq.*), to codify the purpose and powers of the USOC, and to create national governing bodies ("NGBs") for each Olympic sport.

---

[9] https://www.teamunify.com/Home.jsp?team=ohosdc

8

45.     Thus, the Sports Act controls the USOC and all of its NGBs, who merely operate as extensions or agents of the USOC.[10]

46.     As of 2018, there are 47 NGBs (one for each Olympic sport), ranging from USA Archery to USA Wrestling.

47.     Under the Sports Act, the USOC has a duty to protect the young athletes who seek to compete in Olympic sports in the United States. The USOC is responsible for the conduct of its NGBs and is required by statute to make sure Team USA's athletes are kept safe from sexual predators. In fact, the USOC has publicly stated the same multiple times and has been forced to apologize for not upholding its promise and obligation to do so.

48.     The USOC is motivated by only two things: medals and money. Its sole goal is to win more sponsorships and more marketing deals so that its executives and Board Members can maintain their "country club" lifestyle, which includes lavish meals, first-class airfare, luxury hotels, bloated salaries and per diems, and the fame and fortune that come from being at the helm of Team USA. In reality, the USOC has decided to sacrifice the safety and welfare of its athletes for the trappings of fame and fortune that accrue to its executives.

49.     Sexual abuse allegations represent a threat to this steady stream of commercial success. For this reason, the USOC tries at every opportunity to suppress the public from recognizing that the USOC is a complete sham. Rather than taking seriously its admitted duty to protect Team USA's athletes, its board members and executives are focused only on themselves and their personal fringe benefits.

---

[10] Title 36 U.S. Code, chapter 2205 organizes and defines the USOC as a "federally chartered corporation." 36 U.S.C. §§ 220501(b)(6), 220502(a).

9

50.     A review of the individual 990 forms of public nonprofits reveals that the USOC annually spends more on outside law firms—paying its politically connected law firms lavishly to defend it in lawsuits and lobby Congress to stop any reforms that would jeopardize the fringe benefits of its 15 board members or the executives at the top who run the USOC—than it does on Safe Sport (the entity the USOC supposedly set up to keep athletes safe and investigate allegations of abuse).

51.     The stated purposes of the USOC include: to develop amateur athletic activity in the United States directly related to international amateur athletic competition;[11] to exercise "exclusive jurisdiction" over "all matters" pertaining to U.S. participation in the Olympic and Pan-American Games;[12] to "obtain for the United States...the most competent amateur representation possible in each event" of the games;[13] to provide "swift resolution of conflicts"; to "protect the opportunity of any amateur athlete, coach, trainer, manager, administrator, or official to participate in amateur athletic competition";[14] and, recently, "to promote a safe environment in sports that is free from abuse, including emotional, physical, and sexual abuse, of any amateur athlete."[15]

52.     In short, the USOC is responsible for the training, entering and funding of U.S. teams for the Olympic, Paralympic, Youth Olympic, Pan American and Para-Pan American Games, while serving as a steward of the Olympic Movement throughout the country. In other words, among the USOC's powers are to "organize, finance, and control the representation of the

---

[11] 36 U.S.C. § 220503(2).

[12] 36 U.S.C. § 220503(3).

[13] 36 U.S.C. § 220503(4).

[14] 36 U.S.C. § 220503(8).

[15] 36 U.S.C. § 220503(15), added Feb. 14, 2018 by PL115-126, 132 Stat. 318.

Case 1:18-cv-02123-WTL-MJD Document 18 Filed 08/03/18 Page 13 of 75 PageID #: 419

United States in the competitions and events" of, the Olympic, Paralympic, and Pan-American Games (the "Games").[16]

53.     The USOC accomplishes this by recognizing, for each of the various sports represented in the Games, one eligible amateur sports organization as an NGB for that sport, and the USOC provides substantial financial support to the NGBs.[17]

54.     Each NGB is charged with promoting competition in its respective sports.

55.     Each NGB is charged with selecting the athletes, officials, and coaches for its sport at the Pan Am Games, World Championships, World Cups, and Olympic Games.

56.     The Pan Am Games, World Championships, World Cups, and Olympic Games are "protected competitions" under the Sports Act.

57.     The USOC controls all aspects of every protected competition.

58.     Each NGB then submits its roster of proposed coaches and athletes for protected competitions to the USOC.

59.     The USOC then enters the athletes and coaches in the protected competitions.

60.     The Sports Act gives the USOC the power to control all of the NGBs.

61.     USA Diving is one of 47 NGBs recognized by the USOC under the Act that sponsors or arranges amateur athletic competition.[18]

62.     The Sports Act gives the USOC the power to enforce compliance by the NGBs with all requirements of the Sports Act.

---

[16] 36 U.S.C. § 220505(c)(3).

[17] 36 U.S.C. §§ 220505(c)(4), (6).

[18] 36 U.S.C. §§ 220501(b)(3), (8).

11

63.     Such power includes the power to put NGBs on probation, to replace the entire board of any NGB, or to de-certify an NGB.

64.     The Sports Act allows the USOC to force NGBs to adopt policies and procedures to ensure the physical safety of athletes.

65.     For example, in 1999, the USOC required all NGBs to purchase insurance to specifically cover the sexual assaults of any minor.

66.     If NGBs did not purchase sexual abuse insurance, their members would not be permitted to use the USOC training facilities in Chula Vista, California; Lake Placid, New York; Marquette, Michigan; or Colorado Springs, Colorado.

67.     In 2010 the USOC created a task force to make recommendations to address the issue of child sexual assault in USOC controlled sports.

68.     In September 2012 that task force presented its recommendation to the USOC Board of Directors.

69.     The USOC Board took no action on those recommendations for almost two years.

70.     Finally, the USOC adopted a Safe Sport Handbook in 2012, which set forth a minimum standards policy.

71.     In 2013, the USOC required each NGB to adopt an athlete safety program by December 31, 2013.[19]

72.     The USOC took no action to ensure that its NGBs, including USA Diving, actually adopted such a program.

---

[19] U.S. House Comm. on Energy & Commerce, *Memorandum re Hearing entitled "Examining the Olympic Community's Ability to Protect Athlete's from Sexual Abuse,"* (May 21, 2018), https://docs.house.gov/meetings/IF/IF02/20180523/108356/HHRG-115-IF02-20180523-SD002.pdf.

73.     USA Diving did not timely adopt all the required elements of the USOC's required Safe Sport program.

74.     The USOC took no action against USA Diving for failing to timely adopt a compliant Safe Sport Program.

75.     By 2014 the USOC knew that sexual abuse of children was widespread in the U.S. Olympic Sports Movement.

76.     The USOC is fully aware of the pervasive amount of child rape in its member NGBs.

77.     The USOC is the final authority in U.S. Olympic Sport.

78.     Other than the USOC, USA Diving has complete and final control over the sport of diving in the United States.

**USA Diving: The Commercial Quest for "Medals and Money" Off the Labor of Athletes**

79.     Although the USOC and the NGBs are restricted by statute from engaging in business for profit,[20] and although USOC receives no permanent funding from the federal government, the Olympics—and the competitive amateur sports industry that feeds into it—is big business.

80.     Olympic-hopeful athletes and coaches are involved in a commercial endeavor infused with money, contracts, and terms. Every participant (athletes, coaches, USA Diving, and the United States Olympic Committee) is a commercial actor.

---

[20] 36 U.S.C. 220507(a).

81.     Each Olympic athlete has a direct commercial relationship with the USOC, which imposes a list of "commercial terms"[21] upon each athlete as a precondition for participating:



82.     The commercial relationship between the NGB and each athlete is further confirmed on the USOC's website, which states that the USOC "supports U.S. Olympic …athletes on and off the field of play through programming such as direct athlete funding, health insurance, tuition grants, media and marketing opportunities, career services and performance-based monetary rewards."[22]

---

[21] *Commercial Terms*, TEAMUSA.ORG, https://www.teamusa.org/Athlete-Resources/Athlete-Ombudsman/Commercial-Terms.

[22] *About the USOC*, TEAMUSA.ORG, https://www.teamusa.org/About-the-USOC

83.     Although this commercial relationship benefits both athletes and the USOC, the commercial benefits that flow to the USOC are massively larger.

84.     In 2016 alone, the USOC generated $339 million in unconsolidated revenue.[23]

85.     The USOC generates billions of dollars in licenses and sponsorships because it controls all aspects of and for the NGBs.

86.     The USOC provides financial support to USA Diving.

87.     According to its 2016 tax returns, over $1,600,000 of USA Diving's nearly $2,000,000 budget came from "grants."

88.     The USOC is believed to be the largest source of these "grants."

89.     USA Diving is completely dependent on the USOC's financial support.

90.     According to Team USA's website, in May 2014, NBC Sports signed a deal worth $7.75 billion to broadcast the Olympic games through 2032.[24]

91.     Larry Probst, the USOC Chairperson, described this as a "terrific deal" and NBC Sports Chairperson Mark Lazarus explained, "The Games are very important pieces of real estate."[25]

92.     The corporate sponsorships of Team USA generate hundreds of millions of dollars of additional revenue off the backs of the athletes who wear Team USA uniforms.[26]

---

[23] UNITED STATES OLYMPIC COMMITTEE 2016 ANNUAL REPORT 41 (2016), http://2016annualreport.teamusa.org/USOC_32554_AR16.pdf. Funding sources include Broadcast rights ($169M); Marks rights ($194M); Licensing Royalties ($21M); Contributions ($98M) and Other ($112M).

[24] Amy Rosewater, *NBC, IOC Ink $7.75 Billion Deal for Games*, TEAMUSA.ORG (MAY 7, 2014), https://www.teamusa.org/News/2014/May/07/NBC-IOC-Ink-775-Billion-Deal-For-Games.

[25] *Id*.

[26] *Sponsors*, TEAMUSA.ORG, https://www.teamusa.org/sponsors (last visited May 2, 2018).

93. Without Team USA's athletes competing, including divers, the USOC would not earn any revenue, would not have any television deals with NBC, would not have any endorsements, and would not have any sponsors.

94. The USOC itself states this on its website,[27] noting that it "does not receive federal financial support" and that it "generat[es] revenue" by "licenses" to sponsors:



95. Despite having hundreds of millions of dollars to spend on the safety and wellbeing of the athletes whose labor earned this money, the USOC and USA Diving (along with

---

[27] *Inside the USOC*, TEAMUSA.ORG, https://www.teamusa.org/about-the-usoc/inside-the-usoc (last visited May 2, 2018).

the other NGBs controlled by the USOC) decided over the last two decades to not pay for reasonable compliance or security measures to ensure that coaches or other executives were not sexually abusing, exploiting, or trafficking female athletes—even though they knew this abuse was occurring.

96.     The USOC did nothing from 2010-2015 to ensure that USA Diving was complying with the Safe Sport program mandated by the USOC.

97.     The USOC identified the need for Safe Sport in 2010, but it did nothing to actually operate and enforce the terms of Safe Sport until several years later, as explained below. This delay allowed pedophile coaches to prey on Team USA's vulnerable athletes for several years.

98.     The USOC's U.S. Center for Safe Sport ("SafeSport"), an ostensibly independent entity designed to investigate and report on sexual misconduct, is sponsored by NBC Sports, the National Basketball Association, and the Women's National Basketball Association,[28] which further shows that all aspects of Team USA and the USOC are commercial:



99.     Despite the USOC's knowledge of rampant sexual abuse in its ranks, including in USA Diving, it continues to leave SafeSport radically underfunded and unsupported.

---

[28] *Safesport*, SAFESPORT.ORG, www.safesport.org.

100.    In 2018, the USOC vowed to "double its funding" of SafeSport—but without saying what the original amount being "doubled" even is:

> **How much funding does the USOC dedicate to safe sport?**
>
> Beginning in 2018, the USOC will effectively double its funding for the U.S. Center for SafeSport to enable the hiring of more investigators and staff, improve the timely resolution of cases, enhance ongoing communication for victims and their families, provide age-appropriate training on recognizing and helping to prevent abuse, and offer better and more accessible resources online. [29]

101.    The USOC has admitted that it "has an important responsibility to create positive, safe and secure environments for American athletes."[30]

102.    The USOC has stated that its "top priority is to protect, support and empower every athlete in our community."[31]

103.    At the same time, the USOC has admitted: "We recognize that the system failed too many girls and women, and we have already taken many important steps - including commissioning an independent investigation and demanding a complete leadership and culture change at USA Gymnastics."[32]

104.    Despite creating the Safe Sport Initiative in 2012, which it calls the "first-of-its-kind abuse prevention program," it waited two years to even create the U.S. Center for Safe Sport:

> In June 2014, the USOC reaffirmed its commitment to advance the safety and well-being of American athletes by approving the creation of the U.S. Center for SafeSport – an independent entity designed to oversee education programs, and investigate and adjudicate sexual misconduct claims in sports that are managed by USOC-sanctioned

---

[29] *Safe Sport*, TEAMUSA.ORG, https://www.teamusa.org/About-the-USOC/Safe-Sport

[30] *Safe Sport*, TEAMUSA.ORG, https://www.teamusa.org/about-the-usoc/safe-sport

[31] Id.

[32] *Id*.

NGBs. Participation in the entity – which launched in March 2017 – is a condition of continued membership in the USOC.[33]

105.   The USOC waited an additional three years to open the Center for Safe Sport in 2017.

106.   As this lawsuit exposes, the USOC has done absolutely nothing to stop any of the ongoing sexual abuse of the USA Diving athletes.

107.   This is despicable given the actual knowledge that the USOC admits it had back in 2010:

> **Why was the U.S. Center for SafeSport originally created?**
>
> In 2010, the USOC determined that sexual and physical abuse warranted greater attention and convened a working group of internal and external experts to provide recommendations about how to improve the community's prevention and response efforts. As the recommendations were implemented, the USOC concluded that the U.S. Olympic and Paralympic movements would benefit from the creation of an independent entity dedicated to investigating and resolving all allegations of sexual abuse associated with any of the USOC's recognized NGBs.[34]

108.   In its own words, the USOC has stated that it alone "*is responsible* for the training, entering and funding" of Team USA and all Olympic sports.[35]

109.   In its own words,[36] the USOC has stated:

> The USOC has two primary responsibilities in its oversight of Olympic and Paralympic sport in the United States. The first is to generate resources in support of its mission, which is to help American athletes achieve sustained competitive excellence. The second is to ensure organizational resources are wisely and effectively used to that end.

---

[33] *Id.*

[34] *Id.*

[35] *About the USOC*, TEAMUSA.ORG, https://www.teamusa.org/About-the-USOC.

[36] *Inside the USOC*, TEAMUSA.ORG, https://www.teamusa.org/About-the-USOC/Inside-the-USOC (emphasis added).

19

110.    As this case demonstrates, the USOC has breached its duty to meet either of its two responsibilities.

111.    In the wake of the Larry Nassar scandal, Scott Blackmun, then-CEO of the USOC, was forced to write an open letter on January 24, 2018, to the victims of sexual abuse caused by the USOC and the NGBs, and in doing so admitted: "We have said it in other contexts, but we have not been direct enough with you. We are … sorry that you weren't afforded a safe opportunity to pursue your sports dreams. The Olympic family is among those that have failed you."[37]

112.    In this January 24 letter, Mr. Blackmun also stated that the USOC must "**Change the Corporate Structure of the NGB.**"[38]

113.    At the same time they were sexually exploiting and trafficking the very athletes whose labor generated all of the revenue, the Olympic officers made sure to pay themselves exorbitant salaries.

114.    Scott Blackmun paid himself a salary of $1.25 million in 2013.

115.    In 2016, there were 129 USOC employees who were paid more than $100,000.

116.    Scott Blackmun and other USOC employees received thousands of dollars in "per diem" for the numerous days he spent traveling domestically and internationally.

117.    In fact, the former CEO of USA Diving, Linda Paul, made $172,000 in salary and another $26,000 in other compensation in 2016.

---

[37] Open Letters to Team USA Athletes Regarding Nasser Case, TEAMUSA.ORG, Jan. 24, 2018, https://www.teamusa.org/News/2018/January/24/Open-Letters-To-Team-USA-Athletes-Regarding-Nassar-Case

[38] *Id*. (emphasis in original).

20

118.    USA Diving's "high performance director," Scott Foley, made nearly $140,000 in salary and $26,000 in other compensation in 2016.

119.    Both Foley and Paul received a "per diem" similar to Blackmun.

120.    USOC and NGB employees travel domestically and internationally to do site visits and attend conferences and meetings to award upcoming championships to interested cities and nations.

121.    On these trips USOC and NGB employees are fawned over and wooed.

122.    USOC and NGB officials do not want to jeopardize their lavish lifestyles.

123.    These officials did not want to jeopardize their income or the hundred-million-dollar revenues of the USOC and its NGBs (including USA Diving) by stopping the sexual abuse committed by coaches such as Bohonyi.

124.    To protect children and blow the whistle would have brought negative attention and jeopardized the commercial benefits they were reaping.

125.    The USOC provides funding to each NGB.

126.    For example, the USOC distributed $55.9 million in grants to its NGBs in 2016.[39]

127.    The USOC is the largest single source of funding for USA Diving.

128.    In order for a diver to participate in USA Diving-sanctioned events, it is necessary to be a USA Diving member.

129.    USA Diving is the national governing body for the sport of diving, and, as such, is a member of the USOC.

---

[39] UNITED STATES OLYMPIC COMMITTEE 2016 ANNUAL REPORT, *supra* note 25, at 27; *see also* Eddie Pells, *With USOC in Turmoil, Athletes Testify About Sex-Abuse Cases*, HOUSTON CHRON. (Apr. 18, 2018) (noting that the USOC, embroiled in sex abuse scandals, and with commercial partners hesitant to strike deals under the current climate, doubled its funding for the US Center for SafeSport, which opened in 2017, to $3.1 million in 2018).

130.    USA Diving is comprised of subdivisions, known as Associations (LDAs), which are defined as geographical areas.

131.    Indiana is its own LDA.

132.    Ohio is another separate LDA.

133.    The membership of USA Diving consists of Athlete Members, Coach Members, Club Members, and others.

134.    Athletes who seek to become U.S. Olympians in diving must be members of USA Diving.

135.    USA Diving selects divers to compete in the Olympic Games, World Championships, and other competitions.

136.    USA Diving submits the names of its selected athletes to the USOC for approval prior to international competitions, including but not limited to the Olympics.

137.    USA Diving requires its coaches to obtain coaching licenses and credentials.

138.    USA Diving requires its coaches to undergo specific training to become a USA Diving coach.

139.    USA Diving now requires that its coach members undergo Safe Sport training concerning child sexual abuse.

140.    This Safe Sport training was mandated by the USOC for USA Diving.

141.    Since 1999 or before, the USOC has required USA Diving to carry specific insurance for sexual abuse.

142.    Since 1999 or before, USA Diving has maintained liability insurance for the sexual abuse of its members.

143.    USA Diving provides specific sexual molestation insurance to its clubs.

144.    USA Diving provides specific sexual molestation insurance coverage to the Ohio State Diving Club.

145.    USA Diving provides specific sexual molestation insurance coverage to its coaches.

146.    USA Diving provides or provided specific sexual molestation insurance coverage to William Bohonyi.

147.    All Plaintiffs are among the intended beneficiaries of USA Diving sexual abuse insurance.

148.    USA Diving has the exclusive power to expel coach members from USA Diving.

149.    USA Diving began keeping a list of "permanently ineligible members" in 2015.[40]

150.    William Bohonyi was the first coach publicly banned by USA Diving.

151.    USA Diving had received numerous complaints about sexual abuse of minor and young adult athletes prior to 2015.

152.    USA Diving has chosen not make these complaints public.

153.    USA Diving has not reported any allegations of child sexual abuse committed by its member coaches to law enforcement.

154.    Each USA Diving member, including Plaintiffs herein, had to abide by the rules and regulations of the USOC and USA Diving when competing in USA Diving sanctioned events.

---

[40] *See* U.S. Center for Safe Sport, *Permanently Ineligible Members*, https://www.teamusa.org/USA-Diving/Resources/Safe-Sport/Permanently-Ineligible-Members (last visited June 28, 2018).

155.    USA Diving members, including Plaintiffs, also had to comply with the drug testing protocols and procedures of the USOC controlled United States Anti-Doping Administration.[41]

156.    To be a USA Diving member, an individual athlete such as the Plaintiffs herein must pay dues to USA Diving.

157.    Part of the dues paid by Plaintiffs went towards the financial grants awarded to Bohonyi and the clubs for which he coached by Defendants USOC and USA Diving.

158.    Similarly, for a diving club to be considered a USA Diving member club, like Defendant Ohio State University Diving Club, the club must pay dues, meet certain minimum standards set out by USA Diving including purchasing required sexual abuse insurance.

159.    And if the member club seeks to hold a USA Diving sanctioned event at the club, it must pay a fee.

160.    All those who seek to coach, judge, or participate in USA Diving-sanctioned events must also pay a membership fee.

161.    Part of each membership fee is used to purchase specific sexual abuse insurance.

162.    Each NGB is mandated to carry specific sexual abuse insurance coverage by the USOC.

163.    The exchange of money for membership creates a fiduciary relationship and a duty between USA Diving and its members, athletes, and coaches.

---

[41] USADA's CEO Travis Tygert and Legal Affairs Director Onye Ikwuakor both litigated against children who were molested in USOC-controlled sports while they worked for Holme Roberts & Owen (now Bryan Cave) in Colorado Springs. Former USOC CEO Scott Blackmun was a partner at Bryan Cave.

164.    Even so, USA Diving took no action to protect its athletes from sexual predators, like William Bohonyi, who was well known to prey on young athletes.

165.    In fact, until February of 2015, USA Diving would only consider banning a coach if that coach had been criminally convicted of sexual misconduct.

166.    Even after making Bohonyi the first "permanently ineligible member in 2015" USA Diving did nothing to stop Bohonyi from coaching USA Diving members.

167.    The USOC has done nothing to force USA Diving to sever its relationship with Bohonyi.

168.    USA Diving has done absolutely nothing to keep Bohonyi from coaching its members, including its minor female members who are known to be vulnerable victims to pedophiles like Bohonyi.

169.    Instead of walling off its athletes from Bohonyi, USA Diving has instead continued to do business with a company that prominently employs Bohonyi.

170.     Despite having actual knowledge of the need to do so, USA Diving failed to adopt any policies, rules, or procedures to keep athletes safe from sexual abuse.

171.    USA Diving provided funding to Bohonyi and the clubs he coached for.

172.    Bohonyi financially benefited from his participation in USA Diving-sanctioned events.

173.    At all relevant times, from the 2008 to 2015, Bohonyi was the agent, servant, and/or employee of USA Diving because he coached USA Diving members at USA Diving member clubs and traveled with these teams to USA Diving-sanctioned events.

174.    At all relevant times, from the 2008 to 2015, Bohonyi was cloaked with the actual and apparent authority to represent USA Diving.

175.  By 2014, USA Diving had received complaints that William Bohonyi was routinely sexually exploiting, assaulting, and raping multiple female athletes that were entrusted into the protection (and bound by the commercial terms of) USA Diving.[42]

176.  USA Diving knew or was willfully blind to the fact that the Bohonyi presented a clear and present danger to young female athletes.

**Ohio State University Diving Club**

177.  In July 2014, the Ohio State University came into possession of hundreds of nude pictures of Plaintiff Estee Pryor as a minor.

178.  The pictures displayed Estee naked and, therefore, were child pornography.

179.  The pictures showed Estee engaged in sexual acts as a minor and, therefore, were child pornography.

180.  As depicted in the hundreds of nude pictures first given to the Ohio State University in July and August, Estee was 16 or 17 years old in all of these photographs.

181.  In the almost four years that the Ohio State University has been in the possession of this child pornography, no action has been taken by Ohio State or the Ohio State Police Department.

182.  The Ohio State Office of Human Resources investigated the allegations made by Pryor against Bohonyi.

183.  On August 29, 2014, the Ohio State Office of Human Resources recommended Bohonyi be terminated.

184.  This report was provided to USA Diving.

---

[42] For purposes of this Complaint, "rape" means any non-consensual sexual activity, that would be considered criminal, including the sexual touching of minors.

185.    USA Diving took no action against Bohonyi following his termination by Ohio State.

186.    USA Diving only investigated Bohonyi after the lobbying of a concerned coach who knew of a previous incident involving Bohonyi.

187.    USA Diving waited until February 2015 to make Bohonyi "permanently ineligible for membership."

188.    Because of the delay in action by USA Diving between July 2014 and February 2015, Bohonyi continued to sexually prey on his victims, including Plaintiff Estee Pryor, a vulnerable athlete forced to engage in sexual acts by coach Bohonyi.

189.    Bohonyi forced Pryor to perform sexual services numerous times between August 2014 and February 2015.

190.    When doing so, Bohonyi psychologically coerced Estee into believing that she was required to perform sexual services in exchange for her continued involvement in diving. He preyed on her age, vulnerability, and dreams of becoming an Olympian, and used the power structure and imbalance of power (coach/athlete) to make her believe she was required to sexually service him in exchange for her involvement in diving for Team USA.

191.    Several of these sexual acts occurred on the campus of the Ohio State University.

192.    Several of these sexual acts occurred in Bohonyi's car before and after diving practice.

**Congress Is Forced to Step In: The Sports Abuse Act 2017**

193.    Because the USOC did nothing to stop the sexual abuse and exploitation of Team USA's athletes for so many years, Congress finally intervened in 2017.

194.    The 2017 Sports Abuse Act was overwhelmingly popular and bipartisan.

27

195.    It sailed through the House (406-3), was approved by the Senate unanimously, was quickly signed by the President, and took effect in February 2018.

196.     At the time, Senator Nelson said: "It's a stain on our country that many of our own young Olympic athletes were sexually abused for years by the very adults they entrusted to train them and keep them safe."

197.    Senator Nelson continued: "No aspiring athlete deserves to have their dream or moment of Olympic gold stolen from them by the actions of a sexual predator. These heinous crimes and the culture that allowed them to go undetected for so long must come to an immediate end."

198.    Senator Donnelly said: "Amateur athletics governing bodies like USA Gymnastics have an obligation to athletes, parents, and the sport to ensure that athletes are safe."[43]

199.    In announcing the 2017 Sports Abuse Act, Senator Collins applauded the multitude of Olympic sex abuse victims who spoke out in the face of retaliation by Team USA, and she criticized the "corrupt system" that had allowed sexual abuse to fester in Team USA sports for decades.[44]

200.    Senator Collins explained that the 2017 Act "reform[s] the law that allows victims to sue sex-crime perpetrators by extending the statute of limitations because it's often difficult

---

[43] Senator Dianne Feinstein, *Senate Passes Bill Requiring U.S. Amateur Athletic Organizations to Report Sexual Abuse*, FEINSTEIN.SENATE.GOV (Nov. 14, 2017), https://www.feinstein.senate.gov/public/index.cfm/press-releases?ID=2BEC8C16-43E4-412A-8660-3E7EC73104F9.

[44] *Id.*

Case 2:18-cv-02123-WTL-MJD Document 18 Filed: 08/03/18 Page 91 of 75 PageID #: 237

for children to recognize that they have had crimes committed against them until much later on into adulthood."[45]

201.    Senator Feinstein (co-author of the law) pointed out that the 2017 Sports Abuse Act "extends the statute of limitations so that victims can sue their abusers 10 years after they become aware of their abuse. This is important because, tragically, survivors often do not fully become aware of their abuse until later in life."[46]

202.    As part of the 2017 Sports Abuse Act, Congress clarified that an Olympic "event" is more than just the moment of competition; Congress defined the term "event" such that it "includes travel, lodging, practice, competition, and health or medical treatment."[47]

## PLAINTIFF-SPECIFIC ALLEGATIONS

### Sexual Abuse, Exploitation, and Forced Labor of Plaintiff Marissa Johnson

203.    Marissa was born in November, 1990, and grew up in Arizona.

204.    Marissa started diving at a young age; she was an accomplished junior diver and a USA Diving member.

205.    In 2008, Indiana University's Diving Club, a USA Diving-certified club, was the premier diving program in the NCAA.

206.    Marissa earned a scholarship to dive at Indiana University ("IU").

207.    As a result, Marissa left Arizona and moved to Bloomington, Indiana, in May 2008.

---

[45] *Id.*

[46] *Id.*

[47] 34 U.S.C. § 20341(10).

208.    Marissa dove for the Indiana University Diving Club from May 2008 until IU began classes in August 2008.

209.    Will Bohonyi was the coach of the Indiana University Diving club from May 2008 until August 2008.

210.    In August 2008, Bohonyi became a volunteer assistant diving coach at Indiana University.

211.    Bohonyi was 23 years old in 2008.

212.    In October 2008, Marissa was 17 years old.

213.    While diving for IU in the fall of 2008, Marissa experienced harassment about her weight from IU diving coach Jeff Huber.

214.    Jeff Huber is now the director of education for USA Diving.

215.    Jeff Huber red-shirted Marissa in the fall of 2008.

216.    Bohonyi befriended Marissa and encouraged her to continue diving despite Huber's comments about her appearance and weight.

217.    In October 2008, Bohonyi asked Marissa to send him a naked picture of herself.

218.    Marissa resisted but then complied and sent Bohonyi several naked pictures of herself.

219.    At the time, she was 17.

220.    In late October or early November 2014, Bohonyi asked Marissa to engage in sexual intercourse with him.

221.    Marissa refused.

222.    Bohonyi threatened to tell Marissa's boyfriend that she had sent him naked pictures if she did not comply with his request for sex.

223. Marissa relented and performed oral sex on Bohonyi in November 2008, when she was 17 years old.

**Sexual Abuse, Exploitation, and Forced Labor of Plaintiff Logan Kline**

224. Plaintiff Logan Kline was a USA Diving member athlete from approximately December 2003 until August 2012.

225. Before college, Logan dove for the Jayhawk Diving Club in Kansas.

226. In May of 2009, Logan moved from her hometown in Kansas to Bloomington, Indiana, to train at the Indiana Diving Club, a USA Diving-certified club and one of the best diving programs in the United States.

227. As an incoming freshman at Indiana University ("IU"), she took summer courses and trained with the club; Logan dove collegiately under head coach Jeff Huber from August 2009 through the summer of 2011.

228. In 2009 Jeff Huber was the diving coach for IU.

229. In 2009 Jeff Huber was the head coach for the Indiana Diving Club.

230. At all times Jeff Huber was a member of USA Diving.

231. Huber is currently the Director of Education for USA Diving.

232. Huber was hard on his female athletes about their weight, and Logan struggled with this criticism.

233. Bohonyi was an assistant coach at Indiana Diving Club.

234. Bohonyi's direct supervisor at the Indiana Diving Club was Jeff Huber.

235. Logan was new to the area and did not have a car.

236. Bohonyi acted as one of Logan's coaches; he mentored her and cultivated a relationship with her.

31

237.    Bohonyi gave Logan rides to practice and was sympathetic about the self-doubt and self-consciousness Logan felt because of Huber's criticisms.

238.    Bohonyi took advantage of Logan's frustration with Huber by complimenting Logan about her body and encouraging her to continue diving—and to continue working with him to advance her diving career.

239.    Although Logan had never engaged in any sexual act other than kissing with anyone else, Bohonyi quickly steered the relationship into a sexual one.

240.    He demanded oral sex from Logan within the first month and a half of meeting her, and in doing so he forced her to trade sex for diving coaching.

241.    Within the first months of their relationship, he engaged in sexual intercourse with her.

242.    Despite being nearly five years older than her, and her USA Diving-certified coach, Bohonyi requested and forced Logan into having at least one sexual act a day while he was acting as her coach.

243.    He made clear to Logan that this exchange was required for him to continue coaching her as part of USA Diving.

244.    Bohonyi engaged in psychological coercion to force Logan to engage in sexual services in exchange for diving coaching. Logan feared that Bohonyi would lose interest in her if she refused his sexual demands, and that her diving would suffer because we would no longer coach her.

245.    Bohonyi routinely scheduled "drive-bys" of the residence where Logan lived, and he requested sex from Logan while in his car when doing so.

246. By Logan's second summer in Bloomington, Bohonyi demanded sexual services on a regular basis, and he forced her to text him sexually explicit photographs of herself to his cell phone.

247. While he was acting as her coach, Bohonyi consistently required some form of sex from Logan on a daily basis.

248. A frequent statement he would make, in anticipation of sexual activity, to Logan was: "You owe me this."

249. Although he insisted upon these sexual services in exchange for coaching in diving, Bohonyi never took Logan out on a date in public to a restaurant or the movies or spent money on her.

250. They did not exchange gifts for holidays or special occasions.

251. In other words, it was not a dating relationship. It was an exploitative sexual relationship in which Bohonyi demanded sexual services because he was her diving coach and could coerce Logan into sexually servicing him. Bohonyi used his position of authority and control over Logan as a USA Diving Coach to demand and obtain daily sexual services.

252. Bohonyi was extremely aggressive in making these demands and never took "no" as an answer from Logan. She was not free to refuse her sexual services and he forced her to provide him sexual services every time he demanded them.

253. On July 9 to 11, 2010, Logan traveled with Bohonyi and the Indiana Dive Club/IU to Christiansburg, Virginia for USA Diving Zone Championships, a mandatory qualifying meet preceding USA Diving's National Championship.

254. Bohonyi travelled with the team of eight IU divers. He was the only coach.

255.    At this competition, Logan was forced to engage in a sexual act with Bohonyi in his hotel room.

256.    In July 2011, Logan traveled with the IU Dive team to the University of California – Los Angeles (UCLA) to compete in Summer Nationals. This meet was a qualifier for the 2011 Pan Am Games.

257.    USA Diving/IU/Indiana Dive Club sponsored the athletes and coaches, funded their trip, paid their per diem, and paid their flight, hotel and other expenses related to Nationals.

258.    Bohonyi traveled with the team of approximately 25 divers as an IU coach.

259.    At this competition, Bohonyi forced Logan to engage in numerous sexual acts in his hotel room because he was the diving coach. He pressured her to provide sexual services because he was the coach and she was his athlete.

260.    Logan ultimately transferred for her last two years of college to Virginia Tech University, where she was an NCAA DI All-American diver and Academic All-American.

261.    After Logan transferred to Virginia Tech, there were times when she would return to Bloomington, Indiana, to visit friends at IU.

262.    During her visits to IU, Bohonyi would contact her via text messages or phone calls to suggest that we get together so that Logan could "give him a blow job" or have anal sex: He would say "don't you want to do me?" or "don't you miss the anal sex?"

263.    One time when Logan had returned to IU to visit, she went to see Bohonyi in his apartment, and found him in bed with a young girl.

264.    In the summer of 2013, Bohonyi sent Logan a text message inquiring whether she was sure that she did not want "anal" one more time.

265.     In October 2014, Logan was contacted via Facebook by Estee Pryor, then a 17-year-old member of the Ohio State University Diving Club, who confided in Logan that she was being coached by Bohonyi.

266.     Estee had learned of Logan's prior relationship with Bohonyi, and reached out to discuss the exploitative sexual relationship that had developed between herself (Estee) and Bohonyi.

267.     Logan was staggered by the similarities between her own relationship with Bohonyi and the one Estee described, including the quick progression from friendly coach to a sexual relationship that featured demands for "blow jobs" in Bohonyi's car on a regular basis.

268.     After Bohonyi was dismissed from Ohio State University in 2015, he attempted to call Logan but she declined to take his call.

269.     Logan believes Bohonyi was attempting to prevent her from sharing information about the nature of their "relationship" with USA Diving and legal authorities.

270.     Logan has suffered a variety of physical and mental symptoms as a result of the personal injuries caused by Bohonyi and USA Diving.

**Sexual Abuse, Exploitation, and Forced Labor of Plaintiff Estee Pryor**

271.     Bohonyi was allowed to victimize Estee in nearly the exact same way that he abused Logan Kline, because the officials and entities in charge of policing Bohonyi did nothing to stop him.

272.     Eszter "Estee" Pryor was born in in 1997 in Romania. She was adopted as a young child by parents in Ohio.

273.     Estee was an aspiring young diver, and an Olympic hopeful; she won a bronze medal on Platform at the 2013 Pan Am Juniors in Tucson, Arizona.

35

274.    In order to advance her career in diving and increase her chances of obtaining the commercial benefits of becoming an Olympian, Pryor sought out the most accomplished diving program in her area.

275.    That program was the Ohio State University Diving Club.[48]

276.    The Ohio State Diving Club practices on the campus of The Ohio State University in Columbus, Ohio.

277.    Steve Skilkens is a former all-American diver for Ohio State, and a major Ohio State Diving booster.

278.    Steve Skilkens owns or has a financial interest in the apparel company, Nayked Apparel.

279.    Steve Skilkens and his family were friends with Bohonyi and promoted him to young, female athletes who were divers. Bohonyi had free access to the Skilkins' home.

280.    In June 2014, while Estee was babysitting at the Skilkens' home one afternoon, Bohonyi invited himself over.

281.    While there, Bohonyi was Snapchatting underage girls from the diving team.

282.    At the time, Bohonyi was the coach of the Ohio State Diving Club, a USA Diving certified club.

283.    In 2014, Bohonyi was 29 years old.

284.    Estee's relationship with coach Bohonyi was friendly at first but it quickly became sexual.

285.    On July 4, 2014, Bohonyi told Estee to send him naked pictures of herself.

---

[48] In 2008, Estee joined the US Elite Diving Academy, and in 2010 the US Elite Diving Academy became the Ohio State Diving Club. There was no change in coaches between the Ohio State Diving Club and the US Elite Diving Academy.

286.     Estee was 16 years old.

287.     She did as Bohonyi told her.

288.     On July 7, 2014, Bohonyi forced Estee to perform oral sex on him on the Ohio State campus.

289.     She was 16 years old.

290.     Estee Pryor competed on numerous international teams for USA Diving, including the Junior World Team in Australia, the Puerto Rico Grand Prix and the Canada Cup.

291.     USA Diving paid for Estee's meals, travel, and lodging at these meets and at others.

292.     In mid-July, 2014, Estee traveled with the Ohio State Diving team, with Bohonyi acting as coach, to Bethesda, Maryland for Nationals, which was a USA Diving-sanctioned event.

293.     During this trip, on or about July 17, 2014, Bohonyi forced Estee to engage in sexual intercourse.

294.     During this trip, Estee's 2012 Olympic-trial synchronized diving partner, Rachel Rubadue, became aware that Estee was involved in a sexual relationship with Bohonyi.

295.     Rubadue told her parents of the of the sexual relationship between Estee and coach Bohonyi.

296.     Rubadue parents informed the head Ohio State Diving Club coach, John Appleman, of the allegations that Estee was engaged in a sexual relationship with Will.

297.     Neither USA Diving nor Ohio State took any immediate action against Bohonyi.

298.     In 2014, when Estee was 17 years old, Estee's teammates discovered her illegal sexual relationship with Defendant (and USA Diving certified coach) Bohonyi at a USA Diving-sanctioned and controlled meet (the Junior Nationals) competition in Bethesda, Maryland.

299.    Estee had traveled across several state lines to attend this event from her home in Ohio.

300.    Her own teammate (also an underage, female diver) was required to inform the head Ohio State Diving club coach in August 2014 (at Senior Nationals, in Knoxville, Tennessee) that Estee was being sexually abused by her USA Diving-certified coach.

301.    Estee had just turned 17 years old. Even though she was the victim, the administration at Ohio State University decided to send her home from the meet, not the perpetrator who sexually abused her—Coach Bohonyi.

302.    From at least 2008 onward, USA Diving knowingly promoted, empowered, and clothed Defendant William Bohonyi with the authority, legitimacy, and trustworthiness of being an official coach of Team USA's diving members.

303.    Despite placing Bohonyi on its banned list in 2015, USA Diving has continued to provide Bohonyi access to underage female victims by doing nothing to stop him from continuing to act as a coach of diving.

304.    USA Diving failed to report Bohonyi to law enforcement for being a serial rapist of minors, as required by both Indiana and Ohio law.

305.    Through at least May 2018, USA Diving took no action to stop Bohonyi from privately coaching USA Diving members, including female USA Diving members who are under the age of 18.

306.    Up through the filing of this lawsuit, USA Diving has continued to do business with Nayked Apparel, which openly and notoriously employs Bohonyi as a promotional and marketing specialist.

307.     Nayked Apparel provided the meet t-shirts for the 2017 USA Diving Senior Nationals in Columbus, Ohio.

308.     Here's a photograph showing Nayked's sponsorship of USA Diving at a 2017 US Diving Meet in Columbus, Ohio:



309.     USA Diving knows or is willfully blind to the fact that Bohonyi works for Nayked Apparel.

310.     This commercial relationship between Nayked Apparel and USA Diving allows Bohonyi to thrive as a pedophile and provides him with "cover" that he is not banned from participating with USA Diving. As a result, he is seen to work directly with USA Diving through Nayked Apparel. Child athletes and their parents are confused or deceived by this commercial relationship.

311.     But for Bohonyi's status as coach, and now business associate of USA Diving in which he is clothed with the authority, legitimacy, and trustworthiness of USA Diving, he never could have gained access to or power over those female divers he victimized. These athletes were misled and deceived by his status as a USA Diving coach and business associate.

312.    In February 2015, USA Diving finally placed Bohonyi's name on a list of "permanently ineligible" members.[49]

313.    But this list is not prominently displayed or publicized, and numerous athletes and law professors have reported that the list is not easily accessible.

314.    By 2017, USA Diving had actual knowledge that Will Bohonyi was still coaching minor female USA Diving athletes in Westerville, Ohio.

315.    In fact, William Bohonyi was still coaching USA Diving athletes through at least the winter of 2017- 2018.

316.    Although USA Diving posted Bohonyi on a "permanently ineligible" list, USA Diving has taken no action whatsoever to enforce Bohonyi's ban. It did not take action to affirmatively protect Estee or any other athletes from Bohonyi, a known serial pedophile and rapist.

317.    This lack of action is compounded by the fact the "banned list" is not prominently displayed on a website that children athletes or other members of the public can quickly and easily access.

318.    Bohonyi was easily able to disappear from Ohio State and then reappear without USA Diving or the USOC making sure that other athletes were protected from him.

319.    In fact, Bohonyi was openly and notoriously coaching diving at Westerville Community Center through at least the winter of 2017-18, as well as privately coaching members of USA Diving, including minor female members.

---

[49] U.S. Center for Safe Sport, *Permanently Ineligible Members*, https://www.teamusa.org/USA-Diving/Resources/Safe-Sport/Permanently-Ineligible-Members (last visited June 28, 2018).

320.     Trying to overcome the abuse and exploitation she suffered, Estee earned a full scholarship to compete in diving for Penn State.

321.     She was unable to compete for Penn State, however, because she constantly had to deal with Bohonyi and the hell he inflicted upon her.

322.     USA Diving's commercial interests are aligned with Bohonyi's in other ways: Nayked Apparel provided the t-shirts for the 2017 USA Diving Senior Nationals in Columbus, Ohio.

323.     As of December 2017, Bohonyi was privately coaching a USA Diving and Ohio State club member and competitor of Estee Pryor, Esther Lawrence, in Ohio.

324.     Without any assistance from USA Diving or any other Defendant, Estee sought and obtained a protective order against her coach, Bohonyi.

325.     Despite that protective order, USA Diving still allowed Bohonyi to freely roam around (and seek to prey upon) other young, female athletes.

326.     Likewise, USA Diving took no action to protect other female athletes from Bohonyi, even though they knew that Bohonyi was a serial sexual predator who had preyed on numerous female athletes, not just Estee.

327.     Between September 2014 and March 2015, while Estee was 17 years old, Will continued—on a weekly basis—to force Estee to engage in oral, anal, and vaginal sex.

328.     Although Bohonyi had been fired from Ohio State, he was still a member in good standing with USA Diving when these sexual acts occurred.

329.     He coerced and manipulate Estee into sexual acts by saying that she "owed him this" and that she had lost him his job.

330.     Bohonyi made her "play games" and engage in deviant sexual acts.

41

331. Bohonyi would post the "rules" for the "game" of their next sexual engagement on his apartment door.

332. Bohonyi demanded Estee use a dildo and penetrate him anally with it.

333. Bohonyi would time her on how quickly he reached orgasm.

334. Bohonyi demanded to be "snowballed"; wherein Estee would use a turkey baster to force ejaculate into Bohonyi's mouth.

335. Bohonyi manipulated Estee and instructed her exactly what to report (falsely) to Ohio State during Ohio State's investigation so that they would not uncover his crimes.

336. Bohonyi exploited the fact that Estee's dad suffered from alcoholism, which had been triggered by Estee's brother's untimely death.

337. USA Diving initially refused to investigate Bohonyi, despite having been given a report summarizing Ohio State's investigation.

338. It was not until an Indiana coach reported Bohonyi's exploitation of Estee Pryor to USA Diving that USA Diving elected to even begin investigating Estee's allegations against Bohonyi.

339. USA Diving was informed that Bohonyi had made Estee create hundreds of pieces of child pornography for him.

340. USA Diving did not report any of Estee's allegations to law enforcement.

341. USA Diving waited until February 2015 to ban Bohonyi.

342. Estee had two visits to the psychiatric ward during the spring of 2015.

343. In mid-April, 2015, Estee's parents sent her to a therapy program for sexual trauma in St. George, Utah.

344. Estee turned 18 on July 12, 2015.

345. When she returned from Utah/returned to Ohio State to train, she met Bohonyi several times in his car and was forced to perform oral sex on him.

346. Some of these sexual encounters occurred on the campus of Ohio State.

347. All of these encounters would not have occurred if Ohio State had turned over the hundreds of pictures of child pornography produced at Bohonyi's direction to the appropriate law enforcement agency.

348. Estee had sex with Bohonyi for the last time in August 2015.

349. Since this time, she has been harassed by the diving community. This harassment included anonymous letters sent to her high school, anonymous text messages, and sticky notes left for her that said "slut," "whore," and "die."

350. At New Albany High School, she was bullied repeatedly and taunted by her classmates at the direction of USA Diving members. She received continuous animus text messages and had to change her phone number in August 2014.

351. Three members of the Ohio State Dive Club attended her high school and bullied her because she had reported her abuse and exploitation and implicated diving coaches and entities.

352. In retaliation, Estee was also forced to move down to a lower level on the diving team.

353. Her father sought and obtained a protective order in October of 2015 against Bohonyi.

354. Even at this time, neither USA Diving nor Ohio State reported Bohonyi to law enforcement outside of The Ohio State University Police Department.

355. USA Diving knew or should have known that William Bohonyi, a USA Diving certified coach, was engaging in sexual contact with minor athletes on their trips.

43

356. Prior to August 1, 2014 USA Diving took no action whatsoever to prevent sexual contact between coaches and minor athletes.

357. Prior to 2015 the USOC took no action to ensure that the NGBs under their control adopted and implemented the USOC mandated Safe Sport Program(s).

358. At least by July 2014, USA Diving had knowledge that Bohonyi sexually assaulted female athletes on numerous occasions.

359. Despite this knowledge, USA Diving did not decertify or otherwise ban, sanction, or report William Bohonyi until February 10, 2015.

360. This six-plus-month delay allowed Bohonyi to rape Estee countless times.

361. In 2016, SafeSport reached out to Estee.

362. Safe Sport wanted Estee to review power point slides about the Safe Sport Process.

363. SafeSport wanted to use Estee's case as a model for how SafeSport should handle complaints.

364. In reality, SafeSport did nothing to help Estee and only wanted to use her as a tool for their public relations stunts.

365. Estee asked SafeSport to investigate USA Diving's ongoing relationship with Bohonyi.

366. But SafeSport did nothing.

367. And USA Diving was not interested in discussing its ongoing relationship with Bohonyi or his employer, Nayked Apparel.

368. Instead, SafeSport wanted to inquire about nonsensical details that had nothing to do with keeping Estee safe, like a game that Estee and her teammates engaged in called, 'fuck one, kill one, marry one?'

44

369.    Estee has suffered a range of mental and physical symptoms as a result of the personal injuries caused by the actions of Defendants. Among other injuries she has suffered, she has incurred medical bills and counseling expenses, lost her scholarship to Penn State, and is likely unable to maintain any long-term employment because of the severe emotional trauma inflicted by her repeated sexual abuse and exploitation by Defendants.

## CLASS ACTION ALLEGATIONS

370.    Plaintiff brings this action individually and pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) or (c)(4) on behalf of herself and the following "Nationwide Classes":

### (b)(2) Injunction Class

All USA Diving athlete members (subject to the USOC's "commercial terms" page or any other contract with the USOC or USA Diving).

### (b)(3) and/or (c)(4) Damage Class

All USA Diving athlete members (subject to the USA Diving's "commercial terms" page or any other contract) who (1) participated in diving from 2008 to the present and (2) traveled or trained with William Bohonyi.

371.    The Classes consist of hundreds, if not thousands, of women throughout the U.S., making joinder impracticable, in satisfaction of Fed. R. Civ. P. 23(a)(1). The exact size of the Class and the identities of the individual members are ascertainable through records maintained by USA Diving (and its predecessors), the U.S. Center for Safe Sport, USA Diving member clubs, William Bohonyi, and others.

372.    The claims of Plaintiffs are typical of the Classes. The claims of Plaintiffs and the Classes are based on the same legal theories and arise from the same unlawful pattern and practice of sexual abuse, exploitation, and trafficking of female divers and other athletes; the promotion and cover-up of this misconduct; and the commercial benefits Defendants received engaging in

this misconduct.

373.     There are many questions of law and fact common to the claims of Plaintiffs and

the Classes, and those questions predominate over any questions that may affect only individual

Class members within the meaning of Fed. R. Civ. P. 23(a)(2), (b)(3), and (c)(4).

374.     Common questions of fact or common questions of law affecting members of the

Classes include, but are not limited to, the following:

a.   Whether Defendants owed a legal duty to the members of the Class under federal
and/or state law?

b.   Whether Defendants' violations of the TVPA were knowing?

c.   Whether the Defendants engaged in commercial sex trafficking?

d.   Whether the Defendants engaged in forced labor or services?

e.   Whether Bohonyi engaged in a pattern of sexual abuse and exploitation (sexual and
physical misconduct)?

f.   Whether Bohonyi's pattern of sexual abuse and exploitation was committed within
the scope of his commercial arrangements/agency/employment with USA Diving?

g.      Whether each Defendant had knowledge of or was willfully blind to Bohonyi's
sexual and physical misconduct?

h.      Whether each Defendant facilitated the sexual misconduct?

i.      Whether each Defendant acted in reckless disregard of the sexual and physical
misconduct committed by Bohonyi?

j.      Whether each Defendant engaged in conduct designed to suppress, cover-up, or
"in any way interfere with" complaints or reports regarding the sexual and physical misconduct
of Bohonyi?

k.      Whether any Defendant negligently hired, retained, supervised, certified, or
endorsed Bohonyi?

l.      Whether any Defendant negligently failed to oversee the conduct of its member
clubs, and their USA Diving certified coaches, including William Bohonyi?

375.     Absent a class action, most of the members of the Classes would find the cost of

litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation, particularly as to liability, in that it conserves the resources of the courts and the litigants and promotes the consistency and efficiency of adjudication.

376.   Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions, and who have expertise in prosecuting personal injury, sexual abuse, and civil rights cases on behalf of vulnerable victims.

377.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the other Class members, and they have the financial resources and experience in handling sex abuse cases to do so.

378.   Neither Plaintiffs nor their counsel have any interests adverse to those of the other members of the Classes.

379.   Plaintiffs and the Class will have personal injury damages that are individualized, but those can be managed separately.

**CLAIMS FOR RELIEF**

380.   The Sports Abuse Act of 2017 specifically amended the civil remedy provision in 18 U.S.C. § 2255, which incorporates the Trafficking Victims Protection Act ("TVPA") and a multitude of criminal sexual abuse statutes.

381.   Section 2255 was enacted to allow minor victims of sex trafficking, forced labor, sexual exploitation, and other crimes, to file a civil lawsuit in federal district court and seek a wide range of remedies. Section 2255 imposes civil liability against those who commit or benefit from the sexual exploitation of minors.

382.     The Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1589-96, creates civil liability for those who commit or benefit from forced labor or services or sex trafficking and trafficking-related offenses, including those offenses enumerated in 18 U.S.C. §§ 1589, 1590, and 1591. Violations of the TVPA include: forcing someone into labor or sexual services; knowingly benefitting from such forced labor or services; recruiting or transporting a person for labor or services against their will, especially if those actions include sexual abuse; attempting to commit these trafficking offenses; conspiring to commit these trafficking offenses; obstructing or interfering with efforts to enforce the TVPA; and benefitting financially from these offenses.

383.     The TVPA expressly authorizes civil remedies against both the perpetrator and others who knowingly benefit from violations of the TVPA. *See* 18 U.S.C. § 1595(a).

384.     Each of the Defendants benefitted financially and/or received something of value from the exploitation, forced sexual acts, and forced labor of the Plaintiffs. Under both the TVPA and Section 2255, the Defendants are liable for the following federal causes of action, as well as the state law claims alleged below.

**Counts of LOGAN KLINE for Violations of Federal Law**

## COUNT 1

### Forced Labor in Violation of 18 U.S.C. § 1589(a), § 1595(a)

*By Logan Kline against William Bohonyi*

385.     Logan realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

386.     Logan is authorized to bring this civil claim against Defendants pursuant to the civil remedies provisions of 18 U.S.C. § 1595(a).

48

387.     In violation of 18 U.S.C. §§ 1589(a) and 1595(a), Defendant William Bohonyi knowingly obtained forced sexual services from Logan by means of serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a)(2), and through a scheme, plan, or pattern, he intended to cause Logan to believe that she was required to engage in sexual acts (service) in exchange for his coaching her in diving.

388.     Bohonyi manipulated her to believe that if she did not perform such labor or services, she would suffer serious harm and damage to her reputation and status as a diving athlete.

389.     As a direct and proximate result of the actions of the Defendants, Logan has suffered personal injuries, including severe emotional distress, physical injuries, and economic losses, and these injuries continue.

390.     Logan claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 2

### Forced Labor in Violation of 18 U.S.C. § 1589(b), § 1595(a)

*By Logan Kline against USA Diving*

391.     Logan realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

392.     Logan is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a).

393.     In violation of 18 U.S.C. §§ 1589 and 1595(a), USA Diving, through its agent, Defendant William Bohonyi, knowingly benefitted from participation in a venture with William Bohonyi, knowing or in reckless disregard of the fact that the venture was engaged in the

providing or obtaining of Logan's labor or services by means of force, threats of force, physical restraint, threats of physical restraint, serious harm or threats of serious harm, and/or a scheme, plan, or pattern intended to cause Logan to believe that, if that she did not perform such labor or services, she would suffer serious harm or physical restraint.

394.     Defendant USA Diving also knowingly benefitted from participating in a venture with Defendant William Bohonyi, which it knew or should have known was engaging in violations of the TVPA.

395.     USA Diving knew or recklessly disregarded the fact that William Bohonyi was obtaining Logan's forced labor and sexual services.

396.     USA Diving housed Logan, paid her travel expenses, and observed her performance in competitions.

397.     Defendant USA Diving knew or should have known the conditions under which Bohonyi was "coaching" Logan in exchange for the forced sexual services she was required to provide to Coach Bohonyi because Logan reported—verbally and in formal written complaints—Defendant Bohonyi's abuse.

398.     USA Diving knowingly or recklessly participated in William Bohonyi's scheme to force Logan into forced sexual acts.

399.     In addition, USA Diving aided and abetted William Bohonyi's violations of 18 U.S.C. § 1589(a) by providing knowing and substantial assistance to him when it knew or should have known that Logan was being subject to forced sexual acts against her will through means of actual force and threats of force, and that she was being abused and raped.

400.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, for

medals achieved at competitions, and for his recruitment and training of other competitive divers, despite knowing that Logan was being repeatedly sexually abused and raped.

401.     As a direct and proximate result of the actions of the Defendants, Logan has suffered personal injuries, including severe emotional distress, physical injuries, and economic losses, and these injuries continue.

402.     Logan claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 3

**Trafficking with Respect to Forced Labor in Violation of 18 U.S.C. § 1590(a), § 1595(a)**

*By Logan Kline against William Bohonyi and USA Diving*

403.     Logan realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

404.     Logan is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a).

405.     In violation of 18 U.S.C. §§ 1590(a) and 1595(a), William Bohonyi knowingly recruited, enticed, harbored, transported, and/or obtained Logan for labor or services.

406.     William Bohonyi knowingly recruited and fraudulently enticed Logan to come to Los Angeles, California, and to Christiansburg, Virginia, with the intention of forcing her into sexual labor and services for him.

407.     William Bohonyi knowingly benefitted (financially and otherwise) from his recruitment, enticement, harboring, transport, and obtaining of Logan. He received free sexual services and labor from Logan.

408.     In violation of 18 U.S.C. §§ 1590(a) and 1595(a), USA Diving, through its

agent, William Bohonyi, knowingly transported Logan to Los Angeles, California, and to

Christiansburg, Virginia, and to various tournaments and training centers.

409.    USA Diving also knowingly benefitted from participating in a venture with

William Bohonyi, which it knew or should have known was engaging in violations of the TVPA.

410.    In addition, the USA Diving, promoted and directly joined William Bohonyi's

violations of 18 U.S.C. § 1590(a) by providing knowing and substantial assistance to him when

they knew or should have known that Logan had been recruited, transported, or obtained by any

means for labor or services.

411.    USA Diving benefitted (financially and otherwise) from William Bohonyi's

actions including by collecting money through sponsorships, licensing, grants, publicity, and for

medals achieved at competitions, and for his recruitment and training of other elite diving

athletes, despite knowing that Logan was being repeatedly sexually abused and raped.

412.    As a direct and proximate result of the actions of the Defendants, Logan has

suffered severe emotional distress, physical injuries, and economic losses, and these injuries

continue.

413.    Logan claims damages in an amount to be proven at trial, including attorneys'

fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 4

### Sex Trafficking of Children, or by Force Fraud or Coercion,
### in Violation of 18 U.S.C. § 1591(a)(1), § 1595(a)

*By Logan Kline against William Bohonyi and USA Diving*

414.    Logan realleges and incorporates by reference each and every allegation

contained in the preceding paragraphs as if fully set forth herein.

415.    Logan is authorized to bring this civil claim against Defendants pursuant to the

civil remedies provision of 18 U.S.C. § 1595(a).

416.    In violation of 18 U.S.C. §§ 1591(a)(1) and 1595(a), William Bohonyi knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Logan, and benefitted from her labor and services, knowing that means of force, fraud, coercion, and the combination of such means would be used to force Logan to engage in commercial sex acts. William Bohonyi's acts towards Logan were in or affecting interstate and/or foreign commerce, including by his including or placing Logan on the team or roster for travel from Indiana to Los Angeles, California, and to Christiansburg, Virginia, and to various tournaments and training centers. Furthermore, William Bohonyi benefitted through his actions against Logan.

417.    In violation of 18 U.S.C. § 1591(a)(1) and 1595(a), USA Diving, through its agent William Bohonyi, knowingly recruited, enticed, and transported Logan to Los Angeles, California, and to Christiansburg, Virginia, and to various tournaments and training centers, in interstate and foreign commerce, and benefited from her labor and services, knowing or in reckless disregard of the fact that means of force, fraud, coercion, and the combination of such means would be used to force Logan to engage in commercial sex acts.

418.    In addition, USA Diving aided and abetted William Bohonyi's violations of 18 U.S.C. § 1591(a) by providing knowing and substantial assistance to him when it knew or should have known that Logan had been recruited, transported, or obtained by any means for labor or services.

419.    USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions, and for his recruitment and training of other elite diving athletes, despite knowing that Logan was being repeatedly sexually abused and raped.

420.     As a direct and proximate result of the actions of the Defendants, Logan has
suffered severe emotional distress, physical injuries, and economic losses, and these injuries
continue.

421.     Logan claims damages in an amount to be proven at trial, including attorneys'
fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 5

### Benefitting from a Venture that Sex Traffics Children, or by Force Fraud or Coercion in Violation of 18 U.S.C. § 1591(a)(2) and § 1595(a)

*By Logan Kline against USA Diving*

422.     Logan realleges and incorporates by reference each and every allegation
contained in the preceding paragraphs as if fully set forth herein.

423.     Logan is authorized to bring this civil claim against Defendant pursuant to the
civil remedies provision of 18 U.S.C. § 1595(a).

424.     In violation of 18 U.S.C. § 1591(a)(2), § 1595(a), USA Diving knowingly
benefitted from participation in a venture with William Bohonyi engaged in a violation of 18
U.S.C. § 1591(a)(1), knowing or in reckless disregard of the fact that that means of force, threats
of force, fraud, and/or coercion would be used to cause Logan to engage in a commercial sex act.

425.     USA Diving also knowingly benefitted (financially and otherwise) from
participation in a venture with William Bohonyi which it knew or should have known was
engaging in acts violating the TVPA.

426.     In addition, USA Diving aided and abetted William Bohonyi's violations of 18
U.S.C. § 1591(a) by providing knowing and substantial assistance to him when it knew or should
have known that Logan had been recruited, transported, or obtained by any means for labor or
services.

427.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions, and for his recruitment and training of other elite diving athletes, despite knowing that Logan was being repeatedly sexually abused and raped.

428.     As a direct and proximate result of the actions of the Defendant, Logan has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

429.     Logan claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

**Counts of ESTEE PRYOR for Violations of Federal Law**

**COUNT 6**

**Forced Labor in Violation of 18 U.S.C. § 1589(a), § 1595(a), § 2255**

*By Estee Pryor Against William Bohonyi*

430.     Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

431.     Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provisions of 18 U.S.C. § 1595(a) and § 2255.

432.     In violation of 18 U.S.C. §§ 1589(a) and 1595(a), Defendant William Bohonyi knowingly obtained forced sexual services from Estee by means of serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a)(2), and through a scheme, plan, or pattern, he intended to cause Estee to believe that, if that she did not perform such labor or services, she would suffer serious harm in violation of 18 U.S.C. § 1589(a)(4).

433. As a direct and proximate result of the actions of the Defendants, Estee has suffered personal injuries, including severe emotional distress, physical injuries, and economic losses, and these injuries continue.

434. Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 7
## Forced Labor in Violation of 18 U.S.C. § 1589(b), § 1595(a), § 2255
### By Estee Pryor Against USA Diving

435. Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

436. Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

437. In violation of 18 U.S.C. §§ 1589 and 1595(a), USA Diving, through its agent, Defendant William Bohonyi, knowingly benefitted from participation in a venture with William Bohonyi, knowing or in reckless disregard of the fact that the venture was engaged in the providing or obtaining of Estee's labor or services by means of force, threats of force, physical restraint, threats of physical restraint, serious harm or threats of serious harm, and/or a scheme, plan, or pattern intended to cause Estee to believe that, if that she did not perform such labor or services, she would suffer serious harm.

438. Defendant USA Diving also knowingly benefitted from participating in a venture with Defendant William Bohonyi, which it knew or should have known was engaging in violations of the TVPA.

439. USA Diving knew or recklessly disregarded the fact that William Bohonyi was obtaining Estee's forced labor and sexual services.

56

440.     USA Diving housed Estee, paid her travel expenses, and observed her performance in competitions.

441.     Defendant USA Diving knew or should have known the conditions under which Bohonyi was "coaching" Estee because Estee reported—verbally and in formal written complaints—Defendant Bohonyi's abuse.

442.     USA Diving knowingly or recklessly participated in William Bohonyi's scheme to force Estee into forced sexual acts.

443.     In addition, USA Diving aided and abetted William Bohonyi's violations of 18 U.S.C. § 1589(a) by providing knowing and substantial assistance to him when it knew or should have known that Estee was being subject to forced sexual acts against her will through means of actual force and threats of force, and that she was being abused and raped.

444.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, for medals achieved at competitions, and for his recruitment and training of other competitive divers, despite knowing that Estee was being repeatedly sexually abused and raped.

445.     As a direct and proximate result of the actions of the Defendants, Estee has suffered personal injuries, including severe emotional distress, physical injuries, and economic losses, and these injuries continue.

446.     Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

**COUNT 8**
**Trafficking with Respect to Forced Labor**
**in Violation of 18 U.S.C. § 1590(a), § 1595(a), § 2255**

*By Estee Pryor Against William Bohonyi and USA Diving*

447.   Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

448.   Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

449.   In violation of 18 U.S.C. §§ 1590(a) and 1595(a), William Bohonyi knowingly recruited, enticed, harbored, transported, and/or obtained Estee for labor or services.

450.   William Bohonyi knowingly recruited and fraudulently enticed Estee to come to Bethesda, Maryland, with the intention of forcing her into sexual labor and services for him.

451.   William Bohonyi knowingly benefitted (financially and otherwise) from his recruitment, enticement, harboring, transport, and obtaining of Estee. He received free sexual services and labor from Estee.

452.   In violation of 18 U.S.C. §§ 1590(a) and 1595(a), USA Diving, through its agent, William Bohonyi, knowingly transported Estee to Bethesda, Maryland, and to various tournaments and training centers.

453.   USA Diving also knowingly benefitted from participating in a venture with William Bohonyi, which it knew or should have known was engaging in violations of the TVPA.

454.   In addition, the USA Diving, promoted and directly joined William Bohonyi's violations of 18 U.S.C. § 1590(a) by providing knowing and substantial assistance to him when they knew or should have known that Estee had been recruited, transported, or obtained by any means for labor or services.

455.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions, and for his recruitment and training of other elite diving athletes, despite knowing that Estee was being repeatedly sexually abused and raped.

456.     As a direct and proximate result of the actions of the Defendants, Estee has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

457.     Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

### COUNT 9

### Obstruction, Attempted Obstruction, Interference with Enforcement in Violation of 18 U.S.C. § 1590(b), § 1591(d), § 1595(a), and § 2255

*By Estee Pryor Against William Bohonyi and USA Diving*

458.     Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

459.     Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

460.     In violation of 18 U.S.C. §§ 1590(b), 1591(d), and 1595(a), Defendant USA Diving obstructed, attempted to obstruct, interfered, and or prevented the enforcement of these sections by:

    a.   ignoring verbal and written complaints of sexual abuse;

    b.   dismissing complaints of sexual abuse;

    c.   refusing to act on reports of sexual abuse;

    d.   threatening athletes with consequences for the abuse that was occurring to them;

    e.   making false statements about athletes; and

    f.   feeding false information to investigators and the media about Estee.

461.    As a direct and proximate result of the actions of the Defendants, Estee has suffered severe emotional distress, physical injuries, and economic losses.

462.    Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 10

### Sex Trafficking of Children, or by Force Fraud or Coercion, in Violation of 18 U.S.C. § 1591(a)(1), § 1595(a), and § 2255

*By Estee Pryor Against William Bohonyi and USA Diving*

463.    Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

464.    Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

465.    In violation of 18 U.S.C. §§ 1591(a)(1), 1595(a), and 2255, William Bohonyi knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Estee, and benefitted from her labor and services, knowing that Estee had not attained the age of 18 years and would be caused to engage in commercial sex acts.[50] William Bohonyi's acts towards Estee were in or affecting interstate and/or foreign commerce, including by his including or placing Estee on the team or roster for travel from Ohio to Maryland, and to various tournaments and training centers. Furthermore, William Bohonyi benefitted through his actions against Estee.

---

[50] Under 18 U.S.C. § 1591(e)(3), the term "commercial sex act" means "any sex act on account of which anything of value is given to or received by any person."

60

466.     In violation of 18 U.S.C. §§ 1591(a)(1) and 1595(a), William Bohonyi knowingly and fraudulently recruited, enticed, harbored, transported, and/or obtained Estee, and benefitted from her labor and services, knowing that means of force, fraud, coercion, and the combination of such means would be used to force Estee to engage in commercial sex acts. William Bohonyi's acts towards Estee were in or affecting interstate and/or foreign commerce, including by his including or placing Estee on the team or roster for travel from Ohio to Maryland, and to various tournaments and training centers. Furthermore, William Bohonyi benefitted through his actions against Estee.

467.     In violation of 18 U.S.C. § 1591(a)(1), 1595(a), and § 2255, USA Diving, through its agent William Bohonyi, knowingly recruited, enticed, and transported Estee to Maryland and to various tournaments and training centers, in interstate and foreign commerce, and benefited from her labor and services, knowing or in reckless disregard of the fact that she had not attained the age of 18 and that means of force, fraud, coercion, and the combination of such means would be used to force Estee to engage in commercial sex acts.

468.     In addition, USA Diving aided and abetted William Bohonyi's violations of 18 U.S.C. § 1591(a) by providing knowing and substantial assistance to him when it knew or should have known that Estee had been recruited, transported, or obtained by any means for labor or services.

469.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions, and for his recruitment and training of other elite diving athletes, despite knowing that Estee was being repeatedly sexually abused and raped.

470.     As a direct and proximate result of the actions of the Defendants, Estee has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

471.     Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 11

### Benefitting from a Venture that Sex Traffics Children, or by Force Fraud or Coercion in Violation of 18 U.S.C. § 1591(a)(2), § 1595(a), and § 2255

*By Estee Pryor Against USA Diving*

472.     Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

473.     Estee is authorized to bring this civil claim against Defendant pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

474.     In violation of 18 U.S.C. § 1591(a)(2), § 1595(a), and § 2255, USA Diving knowingly benefitted from participation in a venture with William Bohonyi engaged in a violation of 18 U.S.C. § 1591(a)(1), knowing or in reckless disregard of the fact that Estee had not attained the age of 18 and would be caused to engage in a commercial sex act, and/or knowing or in reckless disregard of the fact that means of force, threats of force, fraud, and/or coercion would be used to cause Estee to engage in a commercial sex act.

475.     USA Diving also knowingly benefitted (financially and otherwise) from participation in a venture with William Bohonyi which it knew or should have known was engaging in acts violating the TVPA.

476.     In addition, USA Diving aided and abetted William Bohonyi's violations of 18 U.S.C. § 1591(a) by providing knowing and substantial assistance to him when it knew or should

have known that Estee had been recruited, transported, or obtained by any means for labor or services.

477.     USA Diving benefitted (financially and otherwise) from William Bohonyi's actions including by collecting money through sponsorships, licensing, grants, publicity, and for medals achieved at competitions, and for his recruitment and training of other elite diving athletes, despite knowing that Estee was being repeatedly sexually abused and raped.

478.     As a direct and proximate result of the actions of the Defendant, Estee has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

479.     Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 12

**Sexual Exploitation, Transportation, and Illegal Sexual Activity in Violation of 18 U.S.C. §§ 2241(c), 2243, 2421, 2422, 2423(a), 2423(b), 2423(c), and 2255**

*By Estee Pryor Against William Bohonyi*

480.     Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

481.     Estee is authorized to bring this civil claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 2255, which covers within its scope numerous of the other statutory sections Defendants violated.

482.     In violation of 18 U.S.C. §§ 2241(c), Defendant did or attempted to cross state lines with the intent to engage in a sex act or attempted to engage in a sexual act with a child age 12-16 by use of force.

483.     In violation of 18 U.S.C. § 2243, Defendant William Bohonyi knowingly engaged in a sexual act with Estee, age 16, at a competition.

484.     In violation of 18 U.S.C. § 2421, Defendant William Bohonyi knowingly transported or attempted to transport Estee in interstate and/or foreign commerce with the intent that she engage in sexual activity for which he could be charged with a criminal offense under, e.g., 18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2242, 2243, 2422, 2423(a), 2423(b), 2423(c), or other applicable law.

485.     In violation of 18 U.S.C. §2422, Defendant knowingly persuaded, induced, enticed, or coerced Estee to travel in interstate and/or foreign commerce with the intent that she engage in a sex act for which a person could be charged with a criminal offense sexual activity for which he could be charged with a criminal offense under, e.g., 18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2243, 2421, 2422, 2423(a), 2423(b), 2423(c), or other applicable law.

486.     In violation of 18 U.S.C. §2423(a), Defendant knowingly transported Estee, and/or attempted to or conspired to transport Estee, who had not yet attained the age of 18 years, in interstate and/or foreign commerce with the intent that she engage in a sex act for which a person could be charged with a criminal offense under, e.g., 18 U.S.C. §§ 1589, 1590, 1591, 2241(c), 2242, 2243, 2421, 2422, 2423(b), 2423(c), or other applicable law.

487.     In violation of 18 U.S.C. § 2423(b), Defendant traveled in interstate commerce for the purpose of engaging in illicit sexual conduct with Estee, a person under 18 years of age.

488.     In violation of 18 U.S.C. § 2423(c), Defendant traveled in foreign commerce and engaged in illicit sexual conduct with Estee, a person under 18 years of age.

489.     As a direct and proximate result of the actions of the Defendant, Estee has suffered severe emotional distress, physical injuries, and economic losses, and these damages are continuing.

490.     Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 13

### Sexual Exploitation of Children in Violation of § 2251, § 2252, § 2255

*By Estee Pryor Against William Bohonyi*

491.     Estee realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

492.     Estee is authorized to bring this civil claim against Defendant pursuant to the civil remedies provision of 18 U.S.C. § 2255.

493.     In violation of 18 U.S.C. §§ 2251, Defendant William Bohonyi persuaded, induced, and coerced Estee, a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing or having reason to know that such depiction would be transmitted through facility of interstate or foreign commerce, specifically through computer or smartphone.

494.     In violation of 18 U.S.C. § 2252, Defendant William Bohonyi knowingly received or transported in commerce via computer or smartphone a visual depiction involving Estee, a minor, engaged in sexually explicit conduct, which he knowingly possessed and/or accessed with intent to view.

495.    As a direct and proximate result of the actions of the Defendant, Estee has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

496.    Estee claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

**Counts of MARISSA JOHNSON for Violations of Federal Law**

**COUNT 14**

**Forced Labor in Violation of 18 U.S.C. § 1589(a), § 1595(a), § 2255**

*By Marissa Johnson Against William Bohonyi*

497.    Marissa realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

498.    Marissa is authorized to bring this civil claim against Defendant pursuant to the civil remedies provision of 18 U.S.C. § 1595(a) and § 2255.

499.    In violation of 18 U.S.C. §§ 1589(a) and 1595(a), Defendant William Bohonyi knowingly obtained forced sexual services from Marissa by means of serious harm or threats of serious harm in violation of 18 U.S.C. § 1589(a)(2); and a scheme, plan, or pattern intended to cause Marissa to believe that, if that she did not perform such labor or services, she would suffer serious harm or physical restraint in violation of 18 U.S.C. § 1589(a)(4).

500.    As a direct and proximate result of the actions of the Defendant, Marissa has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

501.    Marissa claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

66

# COUNT 15

## Sexual Exploitation of Children in Violation of § 2251, § 2252, § 2255

### *By Marissa Johnson Against William Bohonyi*

502.     Marissa realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

503.     Marissa is authorized to bring this civil claim against Defendant pursuant to the civil remedies provision of 18 U.S.C. § 2255.

504.     In violation of 18 U.S.C. §§ 2251, Defendant William Bohonyi persuaded, induced, and coerced Marissa, a minor, to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, knowing or having reason to know that such depiction would be transmitted through facility of interstate or foreign commerce, specifically through computer or smartphone.

505.     In violation of 18 U.S.C. § 2252, Defendant William Bohonyi knowingly received or transported in commerce via computer or smartphone a visual depiction involving Marissa, a minor, engaged in sexually explicit conduct, which he knowingly possessed and/or accessed with intent to view.

506.     As a direct and proximate result of the actions of the Defendant, Marissa has suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

507.     Marissa claims damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

**Counts of All Plaintiffs for Violation of State Common Law**

## COUNT 16

### Negligent Supervision

*All Plaintiffs Against USA Diving and Ohio State Diving Club*

508.     Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

509.     Defendants each had a duty to protect Plaintiffs from the sexual abuse, harassment, and exploitation of William Bohonyi. Not only was one Plaintiff a minor during much of the time period above, but Plaintiff was subject to "Commercial Terms" and other contractual provisions with USA Diving.

510.     This duty has already been admitted: the USOC and USA Diving have repeatedly stated publicly and on their own websites that they are "responsible" for the protection of Team USA's athletes, and the USOC has apologized for "failing" Team USA's athletes by failing to protect them from sexual predators.

511.     At least as early as 2014, and certainly by 2015, Defendants had notice of Defendant William Bohonyi's sexual abuse of Plaintiffs Estee Pryor and Logan Kline, among others.

512.     Defendants knew or should have known that William Bohonyi's conduct, agency, and/or employment would subject third parties to an unreasonable risk of harm.

513.     Defendants improperly supervised William Bohonyi by failing to monitor his actions and by acting to obstruct or interfere with investigations of William Bohonyi's sexual assaults of USA Diving athletes.

514.    As a direct and proximate result of the actions of the Defendants' actions, Plaintiffs suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

515.    Plaintiffs claim damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## COUNT 17

## Negligent Retention

### *All Plaintiffs Against USA Diving and Ohio State Diving Club*

516.    Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

517.    Defendants had a duty to protect Plaintiffs from the sexual abuse, harassment, and exploitation of William Bohonyi. Not only was one Plaintiff a minor during much of the time period above, but Plaintiffs were subject to "Commercial Terms" and other contractual provisions with USA Diving and/or the USOC.

518.    This duty has already been admitted: the USOC and USA Diving have repeatedly stated publicly and on their own websites that they are "responsible" for the protection of Team USA's athletes, and the USOC has apologized for "failing" Team USA's athletes by failing to protect them from sexual predators.

519.    By 2014, Defendants had notice of Defendant William Bohonyi's sexual abuse of at least Plaintiff Estee Pryor and Logan Kline, among others.

520.    Defendants knew or should have known that William Bohonyi's conduct, agency, and/or employment would subject third parties to an unreasonable risk of harm.

521.     Defendants knew or should have known that William Bohonyi was dangerous and was unfit to be an employee or agent of USA Diving.

522.     Defendants retained William Bohonyi despite its knowledge of the risks that he posed to Plaintiffs and third parties.

523.     By funding and promoting the travel, training, and competitive events at which William Bohonyi acted as USA Diving's agent, Defendants continued to create unreasonable risks to Plaintiffs and others.

524.     Defendants allowed the sexual assaults committed by William Bohonyi to continue because as one of its coaches delivering "medals and money" to Team USA's balance sheet, he brought financial success to the USOC by generating more sponsorships, revenues, licensing deals, and publicity.

525.     USA Diving made a financial calculation to place its lust for "medals and money" over the safety and sanctity of its divers, including Estee and Logan.

526.     As a direct and proximate result of the actions of the Defendant, Plaintiffs suffered severe emotional distress, physical injuries, and economic losses, and these injuries continue.

527.     Plaintiffs claim damages in an amount to be proven at trial, including attorneys' fees, injunctive relief, and other relief that the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs are entitled to and hereby demand a jury trial in this matter.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court will:

a.    Enter judgment against Defendants, jointly and severally, in such amounts as will fully and adequately compensate Plaintiffs for the damages they have suffered, in an amount to be determined at trial;

b.    Award Plaintiffs punitive damages against Defendants, jointly and severally, in an amount to be determined by the jury for Defendants' violations of federal law;

c.    Award Plaintiffs pre-judgment and post-judgment interest;

d.    Award Plaintiffs their actual expenses of litigation, including reasonable attorney's fees;

e.    Award Plaintiffs injunctive relief that requires the USA Diving to put in place (and fund) supervision and compliance protocols that actually prevent, uncover, and stop the sexual abuse, exploitation, and trafficking of USA Diving athletes;

f.    Appoint Plaintiffs as class representatives;

g.    Appoint Plaintiffs' counsel as counsel for the class;

h.    Award Plaintiffs such other and further relief as the Court deems just and proper.

Respectfully submitted:


/s/ Jonathan Little
Jonathan Little, No. 27421-49
Jessica Wegg, No.28693-49
Saeed and Little, LLP
1433 N. Meridian Street
Indianapolis, IN 46202
317-721-9214
jon@sllawfirm.com
jessica@sllawfirm.com

Rex A. Sharp, *admitted pro hac vice*
Ryan C. Hudson, *admitted pro hac vice*
Larkin E. Walsh, *admitted pro hac vice*
Scott B. Goodger, *admitted pro hac vice*
Sharp Law | Rex A. Sharp, P.A.
5301 W. 75th St.
Prairie Village, KS 66208
913.901.0505
913.901.0419 (fax)
rsharp@midwest-law.com
rhudson@midwest-law.com
lwalsh@midwest-law.com
sgoodger@midwest-law.com

## CERTIFICATE OF SERVICE

I certify that the foregoing document was filed via the Court's ECF system on this 3rd day of August, 2018. Service will be made electronically on all ECF-registered counsel of record via email generated by the Court's ECF system. In addition, this amended pleading will be served on those defendants who have not appeared in the case in accord with Fed. R. Civ. P. 4.

/s/ Jonathan Little
Jonathan Little, No. 27421-49
Counsel for Plaintiffs