UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ESZTER PRYOR,**

      **Plaintiff,** :

  v.                      Case No. 2:22-cv-00163
                         Judge Sarah D. Morrison
                         Magistrate Judge Kimberly A.
**THE OHIO STATE**         Jolson
**UNIVERSITY,** :

      **Defendant.**

### OPINION AND ORDER

The underlying facts of this case are troubling. An assistant diving coach sexually abused a diver. Eszter Pryor, a minor, was an aspiring collegiate diver and Olympic hopeful; William Bohonyi, was a coach who capitalized on Ms. Pryor's aspirations and the power imbalances in their relationship. Mr. Bohonyi has been prosecuted and he pled guilty to two counts of sexual battery.[1]

Ms. Pryor brought this Title IX action against The Ohio State University, where she dove on the club team and Mr. Bohonyi coached, alleging Ohio State was deliberately indifferent to Mr. Bohonyi's sexual harassment of her. Ohio State moved for summary judgment. (Mot., ECF No. 16.) Ms. Pryor opposed the Motion on the merits (Opp., ECF No. 27), but also filed a Rule 56(d) declaration requesting

---

[1] *See Ohio v. Bohonyi*, Franklin Cty. C.P. No. 18-CR-005888 (filed Nov. 30, 2018); *see also Lynch v. Leis*, 382 F.3d 642, 648, n.5 (6th Cir. 2004) (Federal courts may take judicial notice of proceedings in other courts of record.).

additional discovery to respond (ECF No. 27-10). Ohio State replied. (Reply, ECF No. 28.)

For the reasons stated below, The Court construes Ms. Pryor's Rule 56(d) declaration as a motion, which is **GRANTED**. Ohio State's Summary Judgment Motion is **DENIED without prejudice**.

I.  RULE 56(D) MOTION

In his Rule 56(d) declaration, Ms. Pryor's counsel contends that in order to respond fully to Ohio State's Summary Judgment Motion, Ms. Pryor needs to conduct additional discovery on a variety of topics. (ECF No. 27-10, ¶¶ 4–9.) Ohio State counters that "plaintiff cannot identify any discoverable material facts that justify delay [in deciding the Motion] beyond mere speculation." (Reply, PageID 447.)

Federal Rule of Civil Procedure 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." The purpose of the Rule is to ensure a plaintiff receives "'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)). When invoking these protections, a plaintiff must do so in good faith by affirmatively demonstrating "how postponement of a ruling on the motion will enable [her] . . . to rebut the movant's showing of the absence of a genuine issue of

2

fact." *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 623 (6th Cir. 2014). The declaration must explain the need for discovery, what material facts plaintiff hopes to uncover, and why it has not previously discovered the information. *Ball*, 385 F.3d at 720.

There is no absolute right to additional time under Rule 56(d), and "a district court does not abuse its discretion in denying discovery when the discovery requested would be irrelevant to the underlying issue to be decided." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (citations omitted). Likewise, a district court may exercise discretion and "limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Id.* Still, courts have construed Rule 56(d) motions generously, and the Sixth Circuit has advised they should be granted "almost as a matter of course." *Id.* (citing *E.M.A. Nationwide, Inc.*, 767 F.3d at 623 n.7); *see Schobert v. CSX Transportation Inc.*, 504 F. Supp. 3d 753, 803 (S.D. Ohio 2020) (Cole, J.) (noting the Sixth Circuit's preference that courts grant Rule 56(d) motions).

There is also a five-factor test courts must take into consideration:

> (1) when the [plaintiff] learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would . . . change[] the ruling . . . ; (3) how long the discovery period had lasted; (4) whether the [plaintiff] was dilatory in its discovery efforts; and (5) whether the [defendant] was responsive to discovery requests.

*City of Memphis*, 928 F.3d at 491 (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) and *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)). With this background, the Court analyzes the *Plott* factors.

3

### A. Whether Ms. Pryor Was Dilatory in Her Discovery Efforts and Length of Discovery Period

The Court will analyze factors (3) and (4) together because the record is instructive as to both. The Court is mindful that the "main inquiry is whether the moving party was diligent in pursuing discovery." *City of Memphis*, 928 F.3d at 491–92 (citing *E.M.A. Nationwide, Inc.*, 767 F.3d at 623).

There is no evidence that Ms. Pryor delayed discovery or was not diligent in pursuing discovery. Plaintiff filed this litigation in January 2022. (Compl., ECF No. 1.) About two months later the parties filed their Rule 26(f) Report and the Court held an initial pretrial conference. (ECF Nos. 10, 13.) Ohio State's Summary Judgment Motion was filed less than a month after the conference on April 5, 2022. (Mot.) Plaintiff moved for an extension of time to file her opposition and was given until July 1, 2022 to do so. (ECF No. 24.) The Summary Judgment Motion was fully briefed by the end of July 2022—six months after the litigation began. (Reply.)

Ms. Pryor stated in the Rule 26(f) Report that she did not "agree to limiting discovery as Defendant suggests." (ECF No. 10, PageID 146.) She makes similar statements throughout the Report. (*Id.* PageID 148 ("Plaintiff does not consent to any limitation on discovery"); PageID 149 ("Plaintiff does not consent to the extremely aggressive expert disclosure dates").)

Ms. Pryor was not dilatory in her discovery efforts and the discovery period was short. *See City of Memphis*, 928 F.3d at 495–96 (finding a two year discovery period to be of neutral weight); *Cline v. Dart Transit Co.*, 804 F. App'x 307, 316 (6th Cir. 2020) (finding ninety days to complete discovery, even though the district court

4

limited discovery to liability, was a "meager amount of time for the parties to complete" discovery). These two factors weigh in Plaintiff's favor.

### B. When Ms. Pryor Learned of the Issues that are the Subject of the Desired Discovery

The first factor "primarily pertains to situations where there was something that prevented a party from learning about a subject of desired discovery until after some discovery had already been sought." *City of Memphis*, 928 F.3d at 492–93. Ms. Pryor knew about the topics in the requested discovery since filing the lawsuit, so this factor is either not applicable and neutral, *see id.* at 493, or weighs slightly in Ohio State's favor.

### C. Whether the Desired Discovery Will Change the Ruling

Ms. Pryor seeks discovery on the following topics:

> 5. Specifically, Plaintiff does not yet know the full extent of what OSU officials knew about OSU coach William Bohonyi before it received a report of sexual abuse of the plaintiff in August of 2014. This is vitally important to Plaintiff's claims because it will determine the time at which OSU received "actual notice" that Bohonyi posed a "substantial risk" to the plaintiff under applicable Title IX caselaw, as set forth in Plaintiff's accompanying response.

> 6. There is already some indication that Bohonyi was counseled by OSU officials on several occasions about his inappropriate interactions with other minor divers. Plaintiff has not yet had the opportunity to fully develop the record of when those counselings occurred or what transpired between the other divers and Bohonyi. These facts are critical to establishing what OSU knew about Bohonyi's proclivities and whether its institutional response—to the extent there was one—was appropriate. If it was not, this is a key way in which Plaintiff is allowed to demonstrate deliberate indifference.

> 7. In addition, Plaintiff should be allowed to conduct discovery on the issue of what amenities and benefits OSU extended to him, if any, even after his termination. Here, Plaintiff alleges that Bohonyi was able to continue using OSU facilities to sexually abuse her even after he was

5

terminated. She also contends that he continued to coach divers using OSU amenities. OSU denies these allegations. In its motion for summary judgment, OSU simply states that it is "unaware" of Bohonyi returning to campus. Plaintiff does not believe that that is true and is entitled to discovery on this point under Title IX caselaw, because it is critical to demonstrating that OSU acted with deliberate indifference to the safety of the Plaintiff (and others) following its inadequate corrective measures.

8. Plaintiff also does not yet have an explanation as to why OSU failed to take any action on the cache of explicit photos they had of the Plaintiff, which were taken and/or solicited by Bohonyi. Had OSU turned these photos over to the proper authorities, it is Plaintiff's position that she would have been spared several months of additional humiliation and abuse.

9. Furthermore, there is a dispute of material fact as to whether OSU officials required the Plaintiff to leave a national diving competition in response to a complaint of sexual abuse, or whether Plaintiff left of her own accord. At the moment, it is Plaintiff's word against the word of the former head coach. Testimony from additional witnesses will help bolster Plaintiff's retaliation claim under Title IX.

(ECF No. 27-10.)

This desired discovery has the potential to change the Court's ruling on summary judgment, and therefore, factor two favors Ms. Pryor. Two examples demonstrate the point. *See City of Memphis*, 928 F.3d at 493 (providing examples of "how further discovery might change the outcome" and finding the second factor favored plaintiffs).

As one example, to make out her Title IX harassment claim, Ms. Pryor must plead and prove that (1) she was sexually harassed by a coach, (2) an official with authority to take corrective action had actual knowledge of the harassment, (3) the school response was clearly unreasonable, and (4) the school's deliberate indifference caused her to suffer discrimination. *Wamer v. Univ. of Toledo*, 27 F.4th

461, 471 (6th Cir. 2022) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290–91 (1998) and *Williams ex rel. Hart v. Paint Valley Local School District*, 400 F.3d 360, 368 (6th Cir. 2005)).

The current record seems to indicate that Ohio State acted promptly after learning of the improper relationship by placing Mr. Bohonyi on administrative leave, investigating him, and terminating him, but the record is scant as to what happened after his termination. Ohio State says it banned Mr. Bohonyi from its Student Life and aquatic facilities on August 10, and that ban became permanent on August 31 when Mr. Bohonyi was terminated. (ECF No. 16-1, ¶¶ 12–14, PageID 210, 219.) Ms. Pryor says she continued to be abused by Mr. Bohonyi on campus after August 2014. (Pryor Decl., ECF No. 27-7, ¶¶ 24, 25.)

Ohio State argues its evidence "indisputably shows that William Bohonyi did not have access to Ohio State facilitates after his suspension" (Reply, PageID 447–48), but its evidence consists of testimony from Ohio State employees and logs showing Mr. Bohonyi did not use his BuckID after it was taken by Mr. Skinner. Additional discovery may reveal other witnesses who observed or interacted with Mr. Bohonyi on campus after his termination. It could also reveal new information about how Ohio State failed to enforce its ban against Mr. Bohonyi post-termination. *See Wamer*, 27 F.4th at 466 (explaining causation in a teacher-student harassment case is satisfied by "showing that (1) following the school's unreasonable response (2) (a) the plaintiff experienced an additional instance of harassment or (b) an objectively reasonable fear of further harassment caused the

7

plaintiff to take specific reasonable actions to avoid harassment which deprived the plaintiff of the educational opportunities available to other students").

As a second example, for Ms. Pryor to be successful on her Title IX retaliation claim,[2] she must plead and prove that Ohio State retaliated against her because she complained about Mr. Bohonyi's sexual harassment. *See Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). Again, the record on Ms. Pryor's retaliation claim is minimal. Ms. Pryor states she left Nationals at Ohio State's direction (Pryor Decl. ¶ 16), while Ohio State focuses on Mr. Appleman's and Ms. Thompson's testimony that they did not ask Ms. Pryor to go home from the meet (ECF No. 28-7, 16:2–13; ECF No. 28-4, 47:6–8). Additional witnesses could testify about what they observed at Nationals. Moreover, presently there is no evidence on the record about Ms. Pryor's allegation that she was "forced to move down to a lower level on the diving team in retaliation for her reports," and additional discovery could change that. (*See* Compl. ¶ 85.)

### D. Whether Ohio State Was Responsive to Discovery Requests

As for the fifth factor, Ms. Pryor argues that the summary judgment motion was filed before the first set of written discovery requests were served and before the first deposition had been scheduled. (Opp. PageID 368.) She also contends that

---

[2] Ohio State argues Ms. Pryor did not plead a retaliation claim in her Complaint, but the Court construes the allegations in paragraphs 44 and 85 as stating such. (*See* Compl. ¶ 44 ("In fact, even though she was the victim, the administration at The Ohio State University decided to send Estee home from Nationals, the day before she was about to compete, not the perpetrator who sexually abused her—Coach Bohonyi."); ¶ 85 ("Estee was also forced to move down to a lower level on the diving team in retaliation for her reports."))

8

Ohio State first produced documents on May 20, 2022, and produced supplemental documents and privilege logs as late as June 22, 2022. (*Id.*) The parties hastily completed five depositions the week before Ms. Pryor's opposition brief was due. (*Id.*)

While these facts demonstrate that the parties were rushed to complete discovery, they do not indicate that Ohio State was deliberately dilatory in its efforts to respond to discovery. The last factor is neutral.

Considered cumulatively, the *Plott* factors weigh in Ms. Pryor's favor. Her Rule 56(d) Motion is therefore **GRANTED**. The Court will allow the parties time to define the scope of and engage in additional discovery as identified in Plaintiff counsel's Rule 56(d) declaration.

## II. SUMMARY JUDGMENT MOTION

Because the Rule 56(d) Motion is granted, Ohio State's Summary Judgment Motion is **DENIED without prejudice**.

If Ohio State files a second motion for summary judgment that contains a statute of limitations argument, Ohio State must brief how the discovery rule, as recently articulated in *Snyder-Hill v. Ohio State University*, applies in this case. *See* 48 F.4th 686 (6th Cir. 2022). The briefing before the Court on the first Summary Judgment Motion was complete before that decision, and both parties assumed the occurrence rule applied. (Mot. PageID 187 n.2; *see generally* Opp. (silent on occurrence rule versus discovery rule application).) The *Snyder-Hill* Court held the discovery rule applies instead; specifically that "[i]n the Title IX context, this means that the claim does not accrue until the plaintiff knows or has reason to know that

9

the defendant institution injured them." 48 F.4th at 704; *see also Garrett v. Ohio State Univ.*, No. 21-3972, __ F.4th __, 2023 WL 2012158, at *5 (6th Cir. Feb. 15, 2023).

Additionally, if the parties cite to depositions in any future motions or memoranda, they must comply with the Court's Standing Orders on Filings and Decorum, and file the entire deposition transcripts. (Standing Orders ¶ 8.)

### III. CONCLUSION

The Court construes Ms. Pryor's Rule 56(d) declaration as a motion, which is **GRANTED**. (ECF No. 27-10.) Ohio State's Summary Judgment Motion is **DENIED without prejudice**. (ECF No. 16.)

IT IS SO ORDERED.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**